# Staunton.

## BREEDEN AND WIFE v. PEALE.

September 24, 1906.

Absent, Cardwell and Buchanan, JJ.

1. ATTACHMENT—*In What Actions Authorized—Motion for Judgment.*—
   Section 2959 of the Code of 1887, which provides for the issuing
   of an attachment at the time or after the institution of any
   action at law for the recovery of any specific personal property,
   or a debt, or damages for the breach of a contract, applies to a
   motion for a judgment by notice.
2. ATTACHMENT—*Lis Pendens—Notice—Subsequent Purchaser.*—A *lis
   pendens* in attachment proceedings filed in the clerk's office of
   the proper county, as provided by section 3566 of the Code of
   1887, operates to give constructive notice of the lien of the attach-
   ment to a subsequent grantee of the defendant, and such grantee
   stands upon no better footing as to the attaching creditor than
   his grantor.
3. FRAUDULENT CONVEYANCES—*Purchaser With Notice—Attachment.*—
   However difficult the proof may be, even against a purchaser
   for full value, and although a debtor has a right to sell his prop-
   erty, and the creditor the right to resort to the substituted prop-
   erty, if it can be made to appear that a conveyance by a debtor
   was made by him with an intent to hinder, delay, and defraud
   his creditors, and this intent was participated in by the grantee,
   the transaction comes within the purview of section 2959 of the
   Code of 1887 relating to attachments, and is void as to creditors.
4. INSOLVENT DEBTOR—*Preferring Creditors—Fraud.*—It is lawful in this
   state for a debtor, though insolvent, to prefer certain of his
   creditors in a deed of assignment, and such preference is neither
   fraudulent, *per se*, nor a badge of fraud.
5. CONVEYANCE BY DEBTOR—*Delaying Creditors—Attachment.*—Every as-
   signment by a debtor of his property must of necessity work
   some delay as to other creditors in the collection of their claims;
   but this is not such delay as is meant by the statute which gives
   the right of attachment when the debtor is about to convey, assign,

conceal, or dispose of his property without intent to hinder, delay and defraud his creditors.

6. FRAUDULENT CONVEYANCES—*Proof—Case at Bar.*—This Court will not undertake to say by what proof an intent to defraud creditors may be shown until a case arises for decision. The same considerations which have restrained courts from giving a definition of fraud will deter them from any effort to prescribe the proof by which fraud shall be ascertained; but they will wait until a case comes up for judgment, and will then determine whether or not fraud has been established. In the case at bar, the facts established by the evidence fail to make out the case stated in the affidavit for the attachment, that the defendant had disposed of or was about to dispose of his estate or some part thereof with intent to hinder, delay, or defraud his creditors.

Error to a judgment of the Circuit Court of Rockingham county in a proceeding by motion for a judgment. Judgment for the plaintiff. Defendants assign error.

*Reversed.*

The opinion states the case.

*Sipe & Harris* and *Harnsberger & Harnsberger,* for plaintiffs in error.

*Conrad & Conrad* and *J. B. Stephenson,* for defendant in error.

KEITH, P., delivered the opinion of the Court.

John B. Peale gave notice to J. W. Churchill that he would, on the 21st day of March, 1904, move the Circuit Court of Rockingham county for judgment against him for the sum of $631.92, with interest, and filed an account with the notice, setting out the items of his demand. On the 15th of .March, Peale made an affidavit in which he states that the defendant, Churchill, "is converting, or is about to convert, a certain house and lot situate in Elkton, in Rockingham county, Va., belonging to and now occupied by him, into money, with intent to

hinder, delay and defraud his creditors, and particularly affiant." Upon this affidavit an attachment was issued, and was levied upon the house and lot named in the affidavit, and a *lis pendens* was filed in the clerk's office of Rockingham county upon the same day.

There is no question raised in this court as to the indebtedness on the part of Churchill to Peale, and it appears that the affidavit, the attachment, the levy and the *lis pendens* are all in conformity with law.

On the 16th of March, 1904, Churchill and wife conveyed the property levied on to Luther N. and Annie E. Breeden, by deed duly acknowledged, which was on the following day, March 17, also admitted to record.

Breeden, on behalf of himself and wife, filed their petition in the cause in the Circuit Court, in which they state that sometime in December, 1903, one William H. Marshall, by verbal contract, purchased of Churchill the house and lot described in the attachment proceedings; that in February, 1904, Marshall sold this property to the petitioners, and that in order to avoid the expense of several conveyances a deed was made from Churchill directly to the petitioners at the suggestion of Marshall; that after receiving the conveyance of the Churchill property petitioners were informed that an attachment had been sued out by John B. Peale and levied upon it, upon the ground that Churchill was converting, or about to convert, said house and lot into money, with intent to hinder, delay and defraud his creditors, and particularly the said John B. Peale; "that Churchill had lived in Elkton for many years, and maintained a high character for honesty and integrity; and petitioners charge that the attachment was sued out upon false suggestion, and that the allegation of fraudulent intent on the part of Churchill is unfounded and untrue; that abundant proof will be offered to show that of the consideration of $2,000 more than $1,900 was actually applied by Churchill to the discharge of his debts."

An issue was made up and tried before a jury to determine this controversy, and a verdict was returned for the plaintiff, John B. Peale. A motion to set aside this verdict was over-ruled, judgment rendered in favor of Peale, and the case is before us upon a writ of error to that judgment.

We have no doubt that section 2959 of the Code, which provides for the issuing of an attachment at the time or after the institution of any action at law for the recovery of any specific personal property, or a debt, or damages for the breach of a contract, applies to a motion for judgment by notice. We are further of opinion that the proceeding upon the attachment in this case, being in conformity with the law, the *lis pendens* operated to give constructive notice of the lien of the attachment to Breeden and wife, it having been left with the clerk of Rockingham county as provided by section 3566 of the Code, and the deed from Churchill to Breeden, conveying the same tract of land, not having been recorded until two days thereafter, on the 17th of March, 1904; the result being that as to the creditor, Peale, Breeden stands upon no better footing than his grantors.

We come now to consider whether or not, as between Peale and Churchill, the attachment was properly sued out.

It is provided by section 2959 of the Code, as one of the grounds for attachment, "That the defendant has assigned or disposed of, or is about to assign or dispose of, his estate, or some part thereof, with intent to hinder, delay, or defraud his creditors."

Before discussing the evidence it may be well to see how the language used in the statute is to be construed.

In Bigelow on Frauds, Volume II, page 85, in discussing the statute of Elizabeth which deals with conveyances made "with intent to hinder, delay and defraud creditors," it is said: "When we come to conveyances made for valuable consideration, a different question, applicable alike to existing and to future creditors, arises. Such conveyances, if made in good faith, are ex-

pressly excepted from the operation of the statute. When is a.
conveyance not made in good faith? Is it necessary that it
should be made with actual intent to defraud to take it out of
the exception? So it appears to have been laid down. 'There·
is one class of cases, no doubt,' it has been said by way of con-
cession, 'in which an actual and express intent is necessary to
be proved—that is, . . . where the instruments sought to·
be set aside were founded on valuable consideration.' " And on
page 86 of the same volume it is said to be "a difficult matter·
to make a case against a purchaser for value, especially for full
value; and it well should be, for the debtor has still the right
to sell his property, and the creditor has still his resort to the·
substituted property. It is no delay in law that he cannot
reach the property sold."

There is no doubt, however difficult the proof may be, that,.
even against a purchaser for value, and for full value, and al-
though the debtor has a right to sell his property and the credi-
tor the right to resort to the substituted property, if it can be
made to appear that the transaction was entered into by the·
grantor with an intent to hinder, delay and defraud his credi-
tors, and that intent was shared and participated in by the·
grantee, it comes within the purview of the statute, and is void
as to creditors. By what proof this may be shown this court·
will not undertake to determine until a case arises for decision.
The same considerations which have withheld courts from giv-
ing a definition of fraud will deter them from any effort to·
prescribe the proof by which fraud shall be ascertained; but
they will wait until a case comes up for judgment, and will
then determine whether it has or has not been established.

"An intent to defraud cannot be inferred from preference·
given to certain creditors over others in a general assignment
where such preference is not inhibited." Waples on Attach-
ments, section 72. But we need not cite authority to show
that in this state it is lawful for a debtor, though insolvent, to·
prefer certain of his creditors in a deed of assignment, and that

such preference is neither fraudulent, *per se,* nor a badge of fraud.

Every assignment by a debtor of his property must, of necessity, work some delay as to other creditors in the collection of their claims; but this is not such delay as is meant by the statute which gives the right of attachment when the debtor is about to convey, assign, conceal or dispose of his property to delay and defraud his creditors. Waples on Attachments, section 66.

Examining the evidence in the light of these principles of law, it appears that Peale and Churchill had been partners, and that Churchill had become indebted to him upon partnership account. He owed other debts, and being urged by Peale for a settlement, promised to secure him by a deed of trust upon his property. This he ultimately failed to do, but in the latter part of December, 1903, entered into a verbal contract with Marshall for the sale of his house and lot, and Marshall in turn sold this property to Breeden and wife, and, for motives of convenience and economy, a deed was made directly from Churchill to Breeden and wife. Churchill made no secret of the fact that he was endeavoring to sell this property. He conversed with Peale upon the subject more than once; there was no concealment; and his explanation of his devoting the proceeds of the sale to the payment of other creditors and of his failure to comply with his promises to secure Peale was that, in his judgment, Peale had sufficient security for his debt in the partnership property, which was under his control, while his other creditors could get nothing except from the sale of the property in dispute. However reprehensible it may have been from a moral standpoint for Churchill to make a promise and break it, it does not constitute fraud in the sense in which that term is used in the statute.

All that can be said is that Churchill owed a debt to Peale which he was unable to pay; that he promised to secure it, and violated his promise; that he appropriated the proceeds of the

property, sold at a fair price, to the satisfaction of claims of other creditors; and his purpose to make that sale was not only not concealed, but was discussed between the debtor and his creditor. These facts do not, in our judgment, make out the case stated in the affidavit for an attachment—that the defendant had disposed of, or was about to dispose of, his estate, or some part thereof, with intent to hinder, delay or defraud his creditors.

We are of opinion that the judgment of the Circuit Court should be reversed, and the case remanded for further proceedings to be had therein.

*Reversed.*