This suit turns on the Motor Vehicle Financial Responsibility act (P.L. 1929 p. 195, as amended P.L. 1931 p. 334), and on an automobile liability policy issued by complainant to defendant Timmerman. *Page 564 
November 27th, 1931, Timmerman, while operating a motor vehicle, was concerned in an accident resulting in injury to another person. In January, 1934, complainant issued to him the policy in question. Some three months later Timmerman, by the allegedly negligent operation of his automobile, injured defendant Godlewska. In October, she instituted against Timmerman an action for damages which is still pending. On December 18th, 1934, complainant gave notice to Timmerman that it canceled its policy as of the time of the issuance thereof. It filed its bill in the present cause a few days later and prays that the policy be annulled on grounds now to be stated.
The policy certifies that complainant does agree to insure Timmerman "subject to the following conditions:" Then follow a number of stipulations:
"Condition O: This policy is issued in consideration of the premium and of the statements set forth in the schedule of statements and made a part hereof, which statements the named assured, by acceptance of this policy, warrants to be true."
The schedule of statements contains, among others:
"Statement 8. The occupation or business of the named assured is Mineral Water.
"Statement 13. The automobiles or trailers covered hereby are owned exclusively by the named assured, except as follows: No exceptions.
"Statement 14. No similar insurance has been declined or canceled by any company, during the past two years, except as follows: No exceptions."
Timmerman, at the time the policy was issued, worked for his father at a roadstand; he served food and drink, including mineral waters and also including alcoholic liquors. Complainant says he should have been described as a bartender. I would suggest waiter. But the statement "mineral water" was not false.
Timmerman's automobile described in the insurance policy was held by him on a conditional bill of sale; it was not owned exclusively by him. *Page 565 
The title of a conditional vendee is not an "unconditional and sole ownership." Hudson Casualty Insurance Co. v. Garfinkel,111 N.J. Eq. 70. "Exclusive ownership is necessarily ownership free from any kind of legal or equitable interest in anyone else." Comstock v. Boyle (Wis.), 128 N.W. Rep. 870.
A similar policy had been issued to Timmerman by the Globe Indemnity Company and had been canceled by that company October 14th, 1933, but in lieu thereof sixteen days later, the same company issued another policy to Timmerman of the same general character. It is not shown why the one policy was substituted for the other. I do not think such a cancellation is intended by statement 14 but I do not have to decide that question definitely, since it clearly appears that statement 13 was untrue.
The appeal to this court is founded on chancery's jurisdiction in matters of fraud. It should be noted that Timmerman did not represent to the complainant, in order to procure the policy, that he was the exclusive owner of the automobile. Complainant issued the policy without previous inquiry on that point. It may be that, by accepting the policy, Timmerman estopped himself from denying that he had represented that he was the exclusive owner of the automobile or it may be that equity should intervene on the ground of mistake. But I incline to believe that complainant has no equitable cause of action for rescission; that its defense to the policy is purely legal — a breach of warranty or of a condition precedent. In Hudson Casualty Insurance Co. v.Garfinkel, supra, which may seem authority for the present bill, the question was not raised. New Amsterdam Casualty Co.
v. Mandel, 115 N.J. Eq. 198. I have not, however, carefully considered this matter as I have come to the conclusion that the bill must be dismissed on other grounds.
Defendants claim that the Motor Vehicle Responsibility act and the policy itself forbid its cancellation, even for fraud, after a third party, the victim of an accident, has become interested.
The statute (section 1) directs the commissioner of motor *Page 566 
vehicles to require from certain classes of persons, which include Timmerman, "proof of financial responsibility to satisfy any claim for damages, by reason of personal injury to, or the death of, any one person, of at least $5,000." Such person's license to operate a motor vehicle shall be suspended by the commissioner until the proof be furnished.
Section 2. Such proof may consist of "evidence of the insuring of such person against public liability * * * in the form of a certificate signed by any duly licensed agent of any company issuing the policy of insurance," or a bond properly conditioned or cash or collateral.
Section 10. The insurance policy which may be taken as proof of financial responsibility may embody "any agreements, provisions or stipulations not contrary to the provisions of this act and not otherwise contrary to the law." The form of the policy shall be submitted to the commissioner for his approval, but he shall approve any form "which discloses the name, address and business of the insured, the coverage afforded by such policy, the premium charged therefor, the policy period, the limit of liability, and the agreement that the insurance thereunder is provided in accordance with the coverage defined in this section and is subject to all of the provisions of this act." The policy is subject to certain statutory provisions "which need not be contained therein."
"(a). The liability of any company under a motor vehicle liability policy shall become absolute whenever loss or damage covered by said policy occurs and the satisfaction by the insured of a final judgment of such loss or damage shall not be a condition precedent to the right or duty of the carrier to make payment on account of such loss or damage. No such policy shall be canceled or annulled as respects any loss or damage by any agreement between the carrier and the insured after the said insured has become responsible for such loss or damage and any such cancellation or annullment shall be void. Upon the recovery of a final judgment against any person for any such loss or damage if the judgment debtor was at the accrual of the cause of action insured against *Page 567 
liability therefore under a motor vehicle liability policy, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment. The policy may provide that the insured or any person covered by the policy shall reimburse the company for payments made on account of any accident, claim or suit involving a breach of the terms, provisions or conditions of the policy; and, further, if the policy shall provide for limits in excess of the limits designated in this section the insurance carrier may plead against such judgment creditor, with respect to the amount of such excess limits of liability any defenses which it may be entitled to plead against the insured. Any such policy may further provide for the prorating of the insurance thereunder with other applicable valid and collectible insurance."
It is not shown that the commissioner of motor vehicles, after the accident of November 27th, 1931, required from Timmerman proof of his financial responsibility or that the company's agent gave to the commissioner a certificate of the policy as evidence of the insuring of Timmerman against public liability. If the company had done so and the commissioner, relying on the certificate, had failed to suspend Timmerman's license to operate a motor vehicle or had restored it, then there would be a clear case of estoppel in favor of the public represented by the commissioner which would prevent the company from denying the validity of its policy. Central Railroad Company of New Jersey
v. McCartney, 68 N.J. Law 165, 175; Howard v. West Jersey,c., Co., 102 N.J. Eq. 517; 104 N.J. Eq. 201. But there is no estoppel in the present case.
However, Timmerman was one of those persons who, under the statute, should have been required by the commissioner to prove his financial responsibility and it was competent for him to arrange with complainant for a policy which would meet the provisions of the statute. If the company assumed such liability, it could not escape the responsibility thus undertaken. Steliga
v. Metropolitan Casualty Insurance Co., 113 N.J. Law 101;114 N.J. Law 156. *Page 568 
I do not know whether the policy in suit is in the form usually issued by complainant in cases where the commissioner requires evidence of financial responsibility, or whether the form of the policy was submitted to the commissioner in accordance with section 10. The policy itself contains this agreement by complainant:
"Financial responsibility coverage — (8) To extend the insurance provided by this policy so as to conform with the provisions of the Motor Vehicle Financial Responsibility Law * * * to the extent of coverage and limits of liability required by such law, but not in excess of the limits of liability stated in this policy. The assured or any other person covered by this policy agrees to reimburse the company for any payment made by the company on account of any accident, claim or suit involving a breach of the terms or conditions of this policy, which payment the company would not have been obligated to make under the provisions of this policy, except for the agreement contained in this paragraph."
The first sentence may be compared to that part of section 10 which requires the commissioner to approve a policy form which contains an "agreement that the insurance thereunder is provided in accordance with the coverage defined in this section and is subject to all of the provisions of this act." The second sentence closely follows the clause in section 10 which authorizes the policy to provide "that the insured or any person covered by the policy shall reimburse the company for payments made on account of any accident, claim or suit involving a breach of the terms, provisions or conditions of the policy." The expression "limits of liability" used twice, means the amount of insurance set by the statute and by the policy — $5,000, on account of injury to one person, c.
Complainant contends that the eighth paragraph of its policy above quoted means no more than that, in the event assured should be required by the commissioner to furnish proof of financial responsibility, then the company would endorse its policy so as to provide the statutory coverage; that until such action should be taken by the company, the eighth paragraph was latent. Counsel stresses the phrase "agrees to extend." I do not think this construction permissible. The same phraseology is found in paragraph 9 *Page 569 
where complainant agrees "to extend the insurance provided by this policy" so as to cover any person operating the automobile with the permission of the assured. If paragraph 8 did not presently provide the coverage specified in the statute, equally the agreement to extend in paragraph 9 gave no immediate protection. The policy, I find, insured Timmerman in conformity with the Financial Responsibility act. Can such a policy be annulled because assured held his automobile under a conditional bill of sale?
The statute is a development of the legislative policy found inP.L. 1916 p. 283 (auto buses); P.L. 1926 p. 383 (taxis), andP.L. 1926 p. 421 (rented cars). Its purpose is to forbid the use of the roads to certain persons, unless they are able to respond in damages in case they cause injury to others. The beneficiaries of the statute and of the policy provisions required thereby, are the public — those who may be injured in motor accidents. The protection afforded by the policy to the assured is outside the purpose of the statute, as clearly appears from the clause giving to the company a right of action against assured in certain cases. Now a policy which is void ab initio
because of a warranty or condition precedent, provides no protection to the public. Such conditions must fail. It will be noted that the statute authorizes inclusion in the policy of "agreements, provisions or stipulations not contrary to the provisions of this act," but does not mention in that connection warranties or conditions, while it does permit conditions binding only as between insurer and assured by authorizing a provision that assured shall reimburse the company for payments involving a breach of the terms, provisions or conditions of the policy.
The situation presented by a financial responsibility policy is much like that created by a fire policy with standard mortgagee clause attached. The insurer's liability to the assured is distinct from its liability to an injured third person. The rights of the latter against the insurer spring from the statute as well as from the policy, just as the rights of the mortgagee are determined by the mortgagee clause. The fire policy remains valid as to the mortgagee, despite a breach of warranty *Page 570 
by the assured owner. Reed v. Firmen's Insurance Co.,81 N.J. Law 523. Likewise, complainant's policy remains valid as to Godlewska. The company's remedy is an action on the policy against Timmerman.