14 N.J. Super. 459 (1951)
82 A.2d 217
FARM BUREAU MUTUAL AUTOMOBILE INSURANCE COMPANY, PLAINTIFF,
v.
ANGELL GEORGIANA, FRANCIS GEORGIANA, JOSEPH GEORGIANA, WILLIAM RANKIN, GEORGE ERTLE, JAMES JARVIS, EDWARD TICK, ROBERT GUYER AND SMITH AND SOLOMON TRUCKING COMPANY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 26, 1951.
*461 Mr. Nicholas Conover English tried the cause for plaintiff (Messrs. McCarter, English & Studer, attorneys).
Mr. Augustus Nasmith tried the cause for defendants, Angell Georgiana, Francis Georgiana, Joseph Georgiana and Smith and Solomon Trucking Company (Mr. Francis Van Orman, attorney).
Mr. Thomas S. O'Brien tried the cause for all other defendants (Mr. Charles Tyne, attorney for defendant, George Ertle; Messrs. Wall, Walsh, Kelly & Whipple and Mr. William L. Johnston, attorneys for remaining defendants).
SCHETTINO, J.S.C.
Plaintiff sues to rescind an automobile truck liability policy issued by it to defendants, Angell Georgiana and Francis Georgiana, on the ground of their fraud in obtaining its issuance. The policy covered a truck for the period May 5, 1949, to November 5, 1949. On October 5, 1949, the truck was involved in an accident in New Jersey. The remaining defendants are plaintiffs and defendants in a law action arising out of the accident and were added as parties defendants in this case because of their interest in the controversy.
This case involves two broad issues: (1) whether plaintiff is entitled to rescind for fraud and (2) whether the Financial Responsibility Law of New Jersey precludes such relief as to the defendants who claim to have sustained injuries by reason of the accident.

I
The policy was issued in Maryland. The Georgianas then resided and the truck was principally garaged in Franklin Township, Somerset County, New Jersey, and that factual situation still continues. The testimony shows that while in Maryland, the Georgianas heard that the authorities of Maryland were carrying on a drive against the operators of uninsured trucks and seeing a card of R. Russell Hitch, an *462 insurance salesman, they called him. Hitch was plaintiff's agent for the soliciting of insurance and I find that Hitch was plaintiff's agent with respect to the transmitting to plaintiff the representations about to be described.
Hitch, knowing that the Georgianas lived in New Jersey and that the truck was registered and principally garaged in New Jersey advised the Georgianas that unless they furnished a Maryland address plaintiff might not issue the policy. The Georgianas furnished the address of a friend, James Hines, Hagerstown, Maryland. The application for insurance prepared by Hitch and signed by the Georgianas falsely represented that the applicants lived in Hagerstown. The policy declarations stated their residence in conformity with the application and further that "The automobile will be principally garaged" in Hagerstown. Paragraph 23 of the "Conditions" provides that "By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations * * *."
The falsity of the representations is not questioned but defendants assert that there is no evidence that the misrepresentations were material and further that under the law of Maryland rescission for fraud will be denied where the carrier's agent knew of the falsity of the representations.
With respect to the issue of materiality plaintiff claims materiality in the fact that it is not authorized to issue policies in New Jersey and would not issue a policy to a resident of this State with respect to a vehicle registered and principally garaged in this State. Defendants urge a deficiency in the want of evidence that the premium charges with respect to Hagerstown vary from the premium charges with respect to Franklin Township, and further assert that no law prohibits the writing of an insurance contract executed outside this State by a company not authorized to act within this State. Defendants' claims, apart from any question of legal soundness, are far from the mark. The overriding fact is that plaintiff was not authorized to act in this State and did *463 not want to write a policy for a New Jersey vehicle. I think the materiality of the representations is manifest. There is more to automobile insurance business than the mere issuance of a policy and collection of premiums. An insurance contract provides for the performance of many obligations by a carrier. A carrier which writes insurance in a given locality must arrange for local handling of potential claims. Wholly apart from possible involvement with New Jersey authorities, the practical considerations, arising from the issuance of an isolated policy in an area in which a carrier does not wish to operate, make the materiality of the representations indisputable.
As stated, Hitch was plaintiff's agent and knew that the representations were false. Hitch was disloyal to his principal. The Georgianas knew that he was acting in fraud of plaintiff on their behalf, and are guilty of connivance with him. Their own testimony demonstrates that they knew that plaintiff would not accept the risk if the truth were revealed and their subsequent relations with plaintiff evidenced a careful continuation of the misrepresentations. In these circumstances there is no room for speculation as to whether the Georgianas may have supposed that the place of residence and garaging was of no concern to plaintiff.
In these circumstances plaintiff is accordingly entitled under the law of Maryland to rescind for fraud as against the named insured. Globe Reserve Mutual Life Ins. Co. of Baltimore City v. Duffy, 76 Md. 293, 25 A. 227 (Ct. of Apps. 1892); Commercial Cas. Ins. Co. v. Schmidt, 166 Md. 562, 171 A. 725 (Ct. of Apps. 1934); Commonwealth Cas. Co. v. Arrigo, 160 Md. 595, 154 A. 136 (Ct. of Apps. 1931). The additional insureds, who assert an interest under the "omnibus" clause, are precluded by the fraud of the named insureds. So also are the injured claimants unless the Financial Responsibility Law requires a contrary conclusion.
There is no evidence that plaintiff discovered the fraud and waived its right to rescind. A reporting agency engaged by plaintiff for a routine investigation failed to find the *464 Georgianas at Hagerstown. Plaintiff sought further information but was successfully lulled into the belief that the representations were true. The report of that agency was not enough to apprise plaintiff of the fraud. Plaintiff did not ascertain the truth until several months after the accident of October 5, 1949.

II
The remaining question is the applicability and effect of the Financial Responsibility Law of our State.
The injured claimants contend that our statute came into play by reason of an accident which Georgiana had in New Jersey on June 1, 1949, resulting in property damage to another vehicle in an amount greater than $25. This accident occurred after plaintiff issued its policy on May 5, 1949, and plaintiff received a report thereof prior to the accident of October 5, 1949.
The question thus raised breaks down into two parts: (a) whether the statute itself operates to bar rescission, and (b) whether a policy provision presently to be discussed has that effect.
The general scheme of the statute contemplates that the Director of Motor Vehicles shall require proof of financial responsibility (R.S. 39:6-1) and the revocation or suspension of license for failure to furnish such proof to the Director (R.S. 39:6-2). The statute provides that a non-resident may come within its purview and his privilege of operation in the State withdrawn for failure to furnish proof (R.S. 39:6-2, 3). I presume that the occasion for our director's concern with respect to nonresidents would be an occurrence within the State of New Jersey, although I express no view in this regard. At any rate the statute describes the policies which can constitute satisfactory proof. R.S. 39:6-18 provides:
"An insurance policy furnished as provided herein shall be a policy of liability insurance issued by an insurance carrier authorized to transact business in this state to the person therein named as insured, *465 or in the case of a nonresident, by an insurance carrier authorized to transact business in any of the states or provinces hereinafter stated."
R.S. 39:6-19 provides:
"In the case of a nonresident, a policy, as aforesaid, of an insurance carrier authorized to transact business in the state or province in which the motor vehicle described in the certificate is registered, or if none is described, then in the state or province in which the insured resides, shall be considered sufficient within the meaning of this chapter, if the carrier (a) executes a power of attorney authorizing the commissioner to accept service of notice or process in an action arising out of a motor vehicle accident in this state, (b) its governing executive authority duly adopts a resolution providing that its policies shall be deemed to be varied to comply with the law of this state relating to the terms of motor vehicle liability policies issued therein, and (c) agrees to accept as final and binding any final judgment duly rendered in an action arising out of a motor vehicle accident in a court of competent jurisdiction in this state.
This section shall be operative as to such insurance carriers, organized and existing under the laws of such state or province and not licensed to transact business in this state, only to the extent and under the same terms and conditions that, under the laws of the state or province where the motor vehicle is registered or in which the insured resides, like recognition, if a law of like effect is in force, is granted to certificates of insurance carriers organized and existing under and by virtue of the laws of this state. If, under the laws of the state or province, in which a law of like effect is in force, certificates of insurance carriers organized and existing under or by virtue of the laws of this state are not accepted, the certificates of insurance carriers of that state or province shall not be accepted under this chapter."
The policy here involved does not satisfy the statute. The named insureds are residents of this State and since plaintiff was not and is not authorized to transact business in this State, its policy could not serve to relieve the named insureds of their obligation to furnish proof under the act. Nor does the provision relating to policies issued to nonresidents apply for the reason that the named insureds are not nonresidents. Hence I need not reach the difficult question whether our State could be competent to make its laws apply of their own force to a contract of insurance made outside its boundaries by a carrier which is not authorized to do business here *466 and which did not in fact offer its certificate to the Director of Motor Vehicles.
Defendants, however, rely further upon paragraph 8 of "Conditions" of the policy which reads:
"Such insurance as is afforded by this policy for bodily injury liability or property damage liability shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. The Insured agrees to reimburse the Company for any payment made by the Company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph."
It is urged that under our decisions this covenant brings the statute into play as a voluntarily assumed liability.
The cases relied upon are Steliga v. Metropolitan Cas. Ins. Co. of New York, 113 N.J.L. 101 (Sup. Ct. 1934) affirmed 114 N.J.L. 156 (E. & A. 1935); United States Cas. Co. v. Timmerman, 118 N.J. Eq. 563 (Ch. 1935); Continental Cas. Co. v. Lanzisero, 119 N.J. Eq. 166 (E. & A. 1935); Woloshin v. Century Indemnity Co., 116 N.J.L. 577 (Sup. Ct. 1936); Ambrose v. Indemnity Ins. Co. of North America, 120 N.J.L. 248 (E. & A. 1938); Century Indemnity Co. v. Simon, 77 F. Supp. 221 (D.N.J. 1948). In short summary, these cases hold that a person within the class required to furnish proof of financial responsibility may arrange with a carrier for the issuance of a policy conforming to the statute in advance of the director's demand, and that the issuance of a policy, having the provisions therein considered, to such person binds the carrier to the statutory provisions.
I am not certain whether these cases rest ultimately upon the proposition that the issuance of a policy to a person within the mentioned class becomes burdened with the obligations of the statute by virtue of the inexorable operation of the law, or whether the result rests upon the thesis that the carrier has voluntarily assumed a liability which it need not assume. *467 My doubt arises from these circumstances: R.S. 39:6-20 provides:
"No motor vehicle liability policy shall be issued or delivered in this State unless such policy discloses * * * the agreement that the insurance thereunder is provided in accordance with the coverage defined in sections 39:6-18 and 39:6-19 of this Title and in this section and is subject to all of the provisions of this chapter."
By amendment in 1945, the following was added to this section:
"Effective as of the date such proof is furnished and to the extent of the coverage required by this chapter and to the extent of the limits of liability specified in section 39:6-18 of this chapter, any policy of motor vehicle liability insurance furnished as proof of financial responsibility pursuant to section 39:6-11 of this chapter, either by the filing of a certificate signed by a duly licensed agent of the company issuing the policy as provided in the said section, or otherwise, shall be deemed amended to conform with and to contain all the provisions required by this chapter, any provision of the policy or certificate to the contrary notwithstanding."
The cases cited arose prior to the 1945 amendment and I am not aware of any judicial interpretation of the amendment. If the statute in its original form was intended directly to bring within its operation any policy issued to a person within the class mentioned, one would expect to find a simple legislative expression to that effect. If the cited cases find such legislative intent then the reliance in those cases upon the policy provisions would seem to have been unnecessary. On the other hand, if those cases rest upon a finding that the carrier voluntarily assumed the statutory obligations by its contract, it is difficult to understand how the inclusion in the policy of language required to be included by R.S. 39:6-20, quoted above, can be construed to be such voluntary assumption. Yet in some of the cases (see Timmerman case, for example) the policy appears to go no further than the statutory mandate.
If those cases bottom their result upon the proposition that the statute brings the policy within its purview by the indirect *468 process of requiring the inclusion of such policy provision, and hence rest upon R.S. 39:6-20, then the statute cannot thus affect the present policy because R.S. 39:6-20 is limited to policies issued or delivered in New Jersey. In fact, as pointed out above, the policy could not come within the statute because it was issued to a resident by a carrier not authorized to transact business in this State. Hence I need not consider the effect, if any, of the 1945 amendment upon the prior cases.
The only possible basis for defendants' position, therefore, would be a wholly voluntary assumption of the statute's obligation by virtue of the quoted policy provision. In construing that policy provision it is important to keep in mind that the policy is a "standard" policy, apparently designed to comply with the laws of various states in which it may be issued. Its purpose was to satisfy statutes, such as the New Jersey one, requiring the inclusion of such provisions if the policy is to be issued or delivered in such jurisdictions. Keeping in mind that, at least in New Jersey, carriers usually charge an additional premium to insureds within the Financial Responsibility Law, the quoted provision should not be construed to be a gratuitous assumption of a liability under the laws of our State when the carrier, not authorized to do business here, is dealing outside the State with one thought to be a nonresident of this State.
The policy provision makes the insurance "comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability." (Italics added.) Hence its language presupposes that a statute shall first be shown to apply, and as already stated, our statute does not purport to apply to a policy issued outside this State to a resident hereof by a carrier not authorized to transact business in the State, nor to a policy issued to a nonresident by such carrier in the absence of compliance with R.S. 39:6-19.
Moreover, if the basis of that liability should be wholly contractual and independent of statutory mandate, it would *469 seem that a carrier might be entitled to rescind that gratuitous obligation by reason of fraud in the procurement of the policy because in the absence of a controlling statute, the rights of injured third parties could not rise above the rights of the insureds.
For these reasons I conclude that the Financial Responsibility Law does not apply. Hence I leave without expression of opinion the question of the effect of our statute, as construed by the cited cases, in a situation where, as here, the insured was not within the statute when the policy was issued but became within it during the policy period; and the further question whether our statute precludes rescission for fraud, as distinguished from rescission for or the defense of "a breach of the terms, provisions or conditions of the policy." R.S. 39:6-20. With respect to the latter question, see the Timmerman case and the Lanzisero case and the interpretation of the first sentence of R.S. 39:6-20 (a) suggested by the Massachusetts, Ohio and Connecticut cases cited in the Lanzisero opinion.
No Maryland statute was brought to the court's attention which might relate to the right to rescind for fraud as against either the insureds or the injured third parties, except Article 66 1/2, sec. 110B and sec. 112, Ann. Code of Maryland Supp. My reading of these sections are in accord with plaintiff's contention; namely, that the Code requires security only if and after an automobile accident occurs in Maryland.
Counsel will submit judgment in accordance with this opinion. No costs will be allowed against the added defendants.