41 N.J. Super. 511 (1956)
125 A.2d 551
HANNAH BUZZONE AND GEORGE BUZZONE, HER HUSBAND, PLAINTIFFS-APPELLANTS,
v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY, A CORPORATION OF THE STATE OF CONNECTICUT, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued July 23, 1956.
Decided September 28, 1956.
*513 Before Judges FREUND, COOLAHAN and WEINTRAUB.
Mr. Hymen B. Mintz argued the cause for the plaintiffs-appellants (Mr. Sol Herships, attorney).
Mr. Samuel A. Larner argued the cause for the defendant-respondent (Messrs. Budd, Larner & Kent, attorneys).
The opinion of the court was delivered by WEINTRAUB, J.S.C. (temporarily assigned).
Defendant issued an automobile liability insurance policy in New York to one Fred Mancini, a resident of that state. During the policy period Mancini was involved in an accident in our State resulting in injuries for which plaintiffs sued him here. The insurer disclaimed liability. Plaintiffs obtained judgment against Mancini and then brought this action upon the policy. The trial court gave judgment for defendant.
The trial court found that Mancini's real name is Fabrizio Inghilleri; that in 1948 he had been involved in an accident in New York as a result of which his license was suspended under the terms of the financial responsibility law of that state; that instead of furnishing proof of responsibility as required by the New York law he obtained a new New York driver's license under the name of Fred *514 Mancini and thereafter obtained the policy in question from defendant by fraud as to his identity. Additionally the court found Mancini failed to comply with the policy provision for notice of the occurrence of the accident involving plaintiffs.
The trial court's factual findings are not here questioned. Rather, plaintiffs contend defendant is liable to them without regard to its liability to Mancini by reason of the financial responsibility laws of the States of New York and New Jersey and the following provision of the insurance policy:
"Such insurance as is afforded by this policy for Bodily Injury Liability or Property Damage Liability shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any liability arising out of the ownership, maintenance, or use of the automobile during the policy period. * * *"
The trial court held that the law of New York applied and that the insurer was not liable under its financial responsibility law because it had not certified the policy to the Commissioner of Motor Vehicles of that state under the provisions of the act.
Plaintiffs press for application of our decisions holding an insurer liable in accordance with the terms of the New Jersey statute (R.S. 39:6-1 et seq. at the time the policy was issued), notwithstanding that proof of responsibility was not filed with the Director of the Division of Motor Vehicles, upon a showing that a policy with the quoted provision was issued in this State to a person of whom proof of financial responsibility could have been required by the Director.
It seems to us that (1) the law of New York applies and (2) if it should be assumed that the law of New Jersey controls, yet the present situation would not fall within the principle of the New Jersey cases relied upon.
Ordinarily the construction of a contract will be governed by the law of the state in which the contract was made. 11 Am. Jur., Conflict of Laws, sec. 116, et seq., p. *515 397 et seq.; Hinkly v. Freick, 86 N.J.L. 281 (E. & A. 1914); James H. Rhodes & Co. v. Chausovsky, 137 N.J.L. 459 (Sup. Ct. 1948); Avery v. Sielcken-Schwarz, 5 N.J. Super. 195 (App. Div. 1949). This general rule is applicable to policies of insurance. 2 Beale, The Conflict of Laws (1935), sec. 346.4, p. 1210; 12 Appleman, Insurance Law and Practice (1943), sec. 7079, p. 120; 3 Richards, Insurance (5th ed. 1952), sec. 399, p. 1318. The policy having been executed in New York and delivered to a resident of New York with respect to a motor vehicle registered in New York, the general rule should be applied, and especially so with respect to the issue of fraud in the inception of the contract. It is true that since the usual policy also affords coverage with respect to operation outside the state of issuance the insurer will at times be called upon to perform in other jurisdictions, although generally the place of performance is in fact the state of the insured's residence. The circumstance that defendant may be called upon to defend suits in other jurisdictions is not enough to take the policy outside of the usual rule of conflict of laws applicable to interpretation of contracts, unless it should affirmatively appear that the parties intended the law of another jurisdiction to control.
Clement v. Atlantic Casualty Insurance Co., 13 N.J. 439 (1953), does not hold to the contrary. The policy, issued in New Jersey, covered liability imposed by law with respect to operation anywhere in the United States. An accident occurred in New York and there resulted in a judgment against the insured. In an action upon the policy the insurer sought to escape by contending that if the accident had occurred in New Jersey, the third party could not have prevailed against the insured. In short, although the policy provided for insurance against liability under the laws of any of the states in which the vehicle might be operated, the carrier sought to limit coverage to such liability as would have been imposed by the law of New Jersey if the accident had here occurred. The court, of course, rejected the insurer's position. The parties to the contract plainly *516 contemplated an obligation to pay with respect to judgments based upon liability imposed upon the insured by the law of another state with respect to operation in such state. In thus construing the contract to embrace judgments against the insured entered in other jurisdictions, the court did not construe the policy under the law of the jurisdiction where the accident occurred, but rather applied the law of New Jersey; that is, the court concluded that by virtue of the law of New Jersey the contract of insurance is interpreted to cover liability imposed by the law of another state even though the basis of the insured's liability would not be recognized in our State if the accident had here occurred and the suit against the insured had been brought here.
Does the quoted provision of the policy show either that the parties to the contract intended the law of New Jersey to apply or that the insurer intended voluntarily to afford protection under the New Jersey financial responsibility law? We think not. The provision was included in a standard form of policy to the end that the policy would be acceptable in those states having financial responsibility laws in which the company might undertake to issue the policy. We agree with the view to that effect in Farm Bureau Mutual Automobile Insurance Co. v. Georgiana, 14 N.J. Super. 459, 468 (Ch. Div. 1951). See also McCann for use of Osterman v. Continental Casualty Co., 6 Ill. App.2d 527, 128 N.E.2d 624, 626 (App. Ct. 1955).
We think it unreasonable to assume a gratuitous undertaking by the insurer to have a policy issued in one state ambulate elsewhere to provide coverage under the financial responsibility laws of all other states through which the insured might happen to pass. It should be borne in mind that the additional obligations of the policy provision and the statute are not for the ultimate benefit of the insured; in fact, the insured would be liable to reimburse the insurer if it were called upon to pay third-party claimants in circumstances in which it would not be liable but for the financial responsibility law. Rather, the provision and a statute which requires it are intended for the protection of *517 the public. The insurer could hardly have in fact intended voluntarily and without compulsion to assume obligations for the benefit of the public of all jurisdictions in which the insured may happen to drive, except, of course, in those situations in which it actually tenders its policy to another jurisdiction because its insured has there been denied the privilege of operation by reason of some prior involvement. See also American Fidelity & Casualty Co. v. Sterling Express Co., Inc., 91 N.H. 466, 22 A.2d 327 (Sup. Ct. 1941), and annotation in 137 A.L.R. 656; but see Hartford Accident & Indemnity Co. v. Wolbarst, 95 N.H. 40, 57 A.2d 151 (Sup. Ct. 1948).
Moreover, if the policy provision should be thought to have the ambulatory quality suggested, there is the gravest doubt that a different result could here be reached. It is settled in this State that, even as to a policy issued here containing the policy provision in question, the insurer is not liable under our financial responsibility law unless the insured was a person who could have been called upon to furnish proof of responsibility. Rasinski v. The Metropolitan Casualty Insurance Co. of New York, 117 N.J.L. 490 (E. & A. 1937); Woloshin v. Century Indemnity Co., 116 N.J.L. 577 (Sup. Ct. 1936); Brodsky v. Motorists Casualty Insurance Co., 112 N.J.L. 211 (Sup. Ct. 1934). In the present case, the insured had not been involved in any event in New Jersey upon which proof of responsibility could have been required under our statute as it existed when the policy issued. The insured's prior difficulty consisted of an accident in New York resulting in damage in excess of $100. It is extremely doubtful that our statute reaches a transient, non-resident insured whose prior difficulty arose in another state.
Hence we turn to the law of New York. The possible bases for recovery are two: (1) liability imposed by the New York statute and (2) liability voluntarily assumed under New York law. Let us consider them in inverse order.
As observed in Georgiana, supra (14 N.J. Super., at page 466) it was not clear at the time of that decision *518 whether our prior cases in which the insurer was held even though the policy was not offered as proof of responsibility, "rest ultimately upon the proposition that the issuance of a policy to a person within the mentioned class becomes burdened with the obligations of the statute by virtue of the inexorable operation of the law, or whether the result rests upon the thesis that the carrier has voluntarily assumed a liability which it need not assume." As we read Atlantic Casualty Insurance Co. v. Bingham, 10 N.J. 460 (1952), and Saffore v. Atlantic Casualty Insurance Co., 21 N.J. 300 (1956), it would now appear to be settled that our rule rests upon the statute itself. We see no suggestion in the cases in New York that the policy provision here involved would constitute a voluntary assumption of the statutory liability even though the policy was not certified as proof of responsibility. If our cases held the insurer on the basis of a voluntary assumption of liability independent of the compulsion of the statute and thus could be said to find liability under principles of common law, there would be presented the question whether we could properly find for plaintiffs by assuming the New York common law to be the same as ours. Cf. Leary v. Gledhill, 8 N.J. 260 (1951). But since our cases now appear to rest the result therein reached wholly upon the New Jersey statute (or at least partly so), plaintiff can prevail only if the New York statute will bear the interpretation we have placed upon ours.
Hence we examine the New York statute to determine whether it imposes the liability here asserted. It differs from ours. Section 94-q of Article 6-A of the New York Vehicle and Traffic Law provides:
"(a) A `motor vehicle liability policy' as said term is used in this article shall mean an owner's or an operator's policy of liability insurance certified as provided in section ninety-four-n or section ninety-four-p as proof of financial responsibility, and issued except as otherwise provided in section ninety-four-p, by an insurance carrier duly authorized to transact business in this state to or for the benefit of the person named therein as insured." (Italics added)
*519 Section 94-n, referred to therein, reads:
"(a) Proof of financial responsibility may be made by filing with the commissioner the written certificate of any insurance carrier duly authorized to do business in this state, certifying that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of financial responsibility. Such certificate shall give the effective date of such motor vehicle liability policy, which date shall be the same date as the effective date of the certificate, and shall designate by explicit description or by appropriate reference all motor vehicles covered thereby, unless the policy is issued to a person who is not the owner of a motor vehicle.
(b) No motor vehicle shall be or continue to be registered in the name of any person required to file proof of financial responsibility unless such motor vehicle is so designated in such a certificate."
Section 94-p deals with non-resident owners of foreign vehicles and hence is not pertinent.
Subsection (h) of section 94-q provides "No motor vehicle liability policy shall be issued or delivered" in that state unless the form shall have been approved by the superintendent of insurance, and that he shall approve any form which contains "the agreement that the insurance thereunder is provided in accordance with the coverage defined in this section and is subject to all the provisions of this article."
Subsection (i) of section 94-q provides that "Every motor vehicle liability policy" shall be subject to provisions set forth in that subsection, and therein appear the provisions that the liability of any company under "a motor vehicle liability policy" shall become absolute whenever loss or damage covered by said policy occurs, etc.
Section 94-s provides:
"When an insurance carrier has certified a motor vehicle liability policy under section ninety-four-n or a policy under section ninety-four-p, the insurance so certified shall not be cancelled or terminated until at least ten days after a notice of cancellation or termination of the insurance so certified shall be filed in the office of the commissioner, except that such a policy subsequently procured and certified shall, on the effective date of its certification, terminate the insurance previously certified with respect to any motor vehicles designated in both certificates."
*520 Thus, under the New York statute the provisions which would prevent the insurer from asserting against members of the public those matters which would absolve it in an action by the insured, apply only to a motor vehicle liability policy as defined in that law, and by definition such policy is a policy certified under section 94-n. There is no comparable language in the New Jersey statute, although, otherwise, the statutes are much alike. Our statute does not expressly restrict its effect to policies thus certified, and, of course, our cases necessarily mean that a restriction to that effect by implication was not found. And this, as we see it, is the crucial difference.
There appear to be but two decisions in New York which bear on the problem. Cohen v. Metropolitan Casualty Ins. Co. of New York, 233 App. Div. 340, 252 N.Y.S. 841 (App. Div. 1931) and American Lumbermen's Mut. Casualty Co. of Illinois v. Trask, 238 App. Div. 668, 266 N.Y.S. 1 (App. Div. 1933), affirmed 264 N.Y. 545, 191 N.E. 557 (Ct. App. 1934). In neither case was the insured one of whom proof of financial responsibility could have been required, and hence, in that respect, the cases may be said not to be controlling. However, on an issue of the law of another state, we should not lightly ignore pertinent judicial statements merely because upon close analysis they might be deemed to be dicta rather than a basis for the result.
In Cohen, the court said (252 N.Y.S., at page 842) (the letter references to the subsections are not the same as in the statute in its present format):
"Plaintiff makes the claim on this appeal that the policy is comprehended by section 94-i, as added by Laws 1929, c. 695 (in effect when this policy was issued, now section 94-k) of article 6-A, Vehicle and Traffic Law, added by Laws 1929, c. 695, since amended by Laws 1931, c. 669, known as the Financial Responsibility Law.
A reading of the whole act, and, in particular, sections 94-i, 94-d and 94-e, convinces us that the words `Motor Vehicle Liability Policy' as defined in the act must refer to `required' policies only. To make the act applicable to all liability policies would mean that whenever such a mishap occurred the insurance carrier would always be absolutely liable under all circumstances. We cannot concur with this reading. The purpose to be furthered by the act, and its limitations, *521 are clearly apparent. It is intended to protect the public from suffering loss through the carelessness of automobile owners who have manifested their financial irresponsibility. It differentiates between car owners who have shown themselves to be irresponsible, and those who have not. It declares that when those who carry liability policies through legal compulsion cause damage in automobile operation, their insurance carriers are absolutely liable for the resulting loss; but it lays down no such rule in the case of the automobile owner voluntarily carrying such a policy, whose responsibility has never been questioned. The construction contended for by plaintiff would encourage fraud and deceit, and would create a legal relationship so unfair and unreasonable as to be unconscionable." (Italics added)
Plaintiffs construe Cohen to mean only that the policy is beyond the statute if the insured is not one of whom the Commissioner may require proof of responsibility, and that, if the insured is within the stated category, the insurer is bound even though the policy is not certified under section 94-n. The concluding sentence of the quotation above does not support the distinction suggested. The encouragement of fraud and deceit and the imposition of an unfair legal relationship would be equally present whether the insured is or is not in the category of persons of whom proof of responsibility could have been required. The essence of the fraud, deceit and imposition to which the court referred lies in subjecting to the statutory liability an insurer who did not intend to assume it, and is the same whether the insured is within or beyond the mentioned category. If the court intended the limited holding plaintiffs here urge, it logically would have omitted any reference to fraud, deceit or imposition upon the insurer, or if it sought thereby to bolster the limited holding plaintiffs suggest, the court would somehow have indicated why its concern with the impact upon the insurer was limited to a situation in which the insured was not within the mentioned category. To state it affirmatively, the sweeping statement that the insurer should be protected against fraud, deceit and imposition shows an intention to hold the insurer under the act only where it certifies the policy to the Commissioner and thus evidences *522 its awareness of and its willingness to assume the statutory obligation as to the specific policy.
We are not sure whether Trask can be said to be helpful. It cites Cohen with approval. Certainly Trask does not affirmatively suggest the insurer would be liable on a mere showing that the insured was within the act. The only question is whether Trask, in its reference to a "required policy," means one which meets the statutory definition of a policy, namely, one which in fact was required and in fact was certified to the Commissioner. We think this is its meaning, but the direction of the opinion is not too clear.
We note that in 7 Appleman, Insurance Law and Practice, (1942), sec. 4296, p. 67, the author speaks of the New York law in these terms:
"New York has held that when such a clause is contained in a policy by a person not falling within the provisions of the statute, such person is a mere volunteer and the liability of the insurer is unchanged. There is no question as to this result when the insured had previously committed no act which would bring him within that class. But, while the New York court may have intended otherwise, a reading of the language in the famous Trask case, both in the lower and higher court, seems to require a proof of positive action by the state officials."
It is interesting to note that the author cites Cohen in support only of the statement contained in the first sentence of the quotation.
Defendant offered the testimony of a member of the New York bar, who, on the basis of Cohen and Trask, concluded there is no liability under the statute unless the insurer certifies the policy under the statutory provision referred to above. Such expert testimony is competent, Max v. Max, 123 N.J.L. 580, 589 (Sup. Ct. 1940), affirmed 125 N.J.L. 271 (E. & A. 1940), although the determination of foreign law must be made by the court and not by a jury. N.J.S. 2A:82-29. Since the witness relied entirely upon those cases, it may be said his testimony should receive no weight beyond what we can find in the cases by a reading of them, but we suppose local counsel *523 may well have a feel of the law which is not apparent to others, and the fact that the witness has specialized in insurance law perhaps gives added strength to his view. Additionally, if Cohen and Trask admitted of the proposition that the insurer could be held under the act or upon the theory of a liability voluntarily assumed on a showing that proof of responsibility could have been demanded, one would expect to find reports of litigation in New York upon those approaches. The absence thereof is more compatible with the thesis that Cohen and Trask have been understood to construe the statute as defendant here contends. We would not ground a decision solely upon this observation, but again it is some slight support for the result we reach.
If we look to other jurisdictions in which the statutes appear to be like New York's and accordingly different from ours, we find a consistent holding that the insurer is not liable unless the policy is actually certified under the act. Farm Bureau Mut. Automobile Ins. Co. v. Hammer, 177 F.2d 793 (4 Cir. 1949), certiorari denied, Beverage v. Farm Bureau Mut. Ins. Co., 339 U.S. 914, 70 S.Ct. 575, 94 L.Ed. 1339 (1950); State Farm Mut. Automobile Ins. Co. v. Arghyris, 189 Va. 913, 55 S.E.2d 16 (Sup. Ct. 1949); McCarthy v. Insurance Co. of Texas, 271 S.W.2d 836 (Tex. Civ. App. 1954); Perkins v. Perkins, 284 S.W.2d 603 (Mo. App. 1955); New Zealand Insurance Co. v. Holloway, 123 F. Supp. 642 (D.C.W.D. La. 1954); Hoosier Cas. Co. of Indianapolis, Ind. v. Fox, 102 F. Supp. 214 (D.C.N.D. Iowa 1952); Tri-State Ins. Co. v. Ford, 120 F. Supp. 118 (D.C.D.N.M. 1954); cf. Travellers Ins. Co. v. Boyd, 312 Ky. 527, 228 S.W.2d 421 (Ct. App. 1949) and Hawkeye-Security Ins. Co. v. Myers, 210 F.2d 890 (7 Cir. 1954).
In Hammer and Arghyris, both of which involved the Virginia statute, found in Hammer to have been patterned after the New York act, the courts reached the conclusion stated. In both cases Cohen was cited in support, and Cohen was also so cited in McCarthy, Holloway and Fox.
*524 We see no room for an assumption that New York would construe its act as we do ours despite the differences in statutory provisions described above. Cf. Leary v. Gledhill, supra (8 N.J. 260). In the face of the New York decisions, debatable though their meaning may be, and the conclusions reached in other states on the basis of statutes like the New York act, we are unable to quarrel with the trial court's finding as to the New York law. Judgment is accordingly
Affirmed.
FREUND, J.A.D. (dissenting).
I dissent from the opinion of the majority for the following reasons:
The plaintiffs, residents of New Jersey, were injured in this State by an automobile owned and operated by Fred Mancini, a resident of New York, who had had a prior accident in New York. They recovered a judgment against him in the Superior Court of New Jersey, Law Division, which remains unsatisfied. The defendant insurance company, authorized to do business in New Jersey, had issued its liability policy in New York, admittedly through fraudulent concealment of the insured's true name.
The majority found that the defendant, under the interpretation of the New York motor vehicle responsibility act by the New York courts, would not be liable because the policy was not certified to the Commissioner of Motor Vehicles as prescribed by that statute. 64-A McKinney, Consolidated Laws of New York (Vehicle & Traffic Law), § 94; Cohen v. Metropolitan Casualty Ins. Co. of New York, 233 App. Div. 340, 252 N.Y.S. 841 (App. Div. 1931); American Lumbermen's Mutual Casualty Co. of Illinois v. Trask, 238 App. Div. 668, 266 N.Y.S. 1 (App. Div. 1933), affirmed 264 N.Y. 545, 191 N.E. 557 (Ct. App. 1934).
In this respect, however, the law of New Jersey differs. Under the provisions of our financial responsibility act, R.S. 39:6-20, the insurer is liable if the insured has had a prior accident even though the Commissioner of Motor Vehicles had not called for proof of financial responsibility. *525 Steliga v. Metropolitan Casualty Ins. Co. of New York, 113 N.J.L. 101 (Sup. Ct. 1934), affirmed 114 N.J.L. 156 (E. & A. 1934); Continental Casualty Co. v. Lanzisero, 119 N.J. Eq. 166 (E. & A. 1936); Atlantic Casualty Insurance Co. v. Bingham, 10 N.J. 460 (1952); Saffore v. Atlantic Casualty Ins. Co., 21 N.J. 300 (1956).
In the Steliga case, supra, Mr. Justice Lloyd said: "It is urged that because the policy was not issued at the demand of the commissioner of motor vehicles, it therefore had no legal status. We do not agree with this proposition." In the Bingham case, supra, Mr. Justice Wachenfeld held that "The trial court * * * correctly determined * * * that the Financial Responsibility Law, R.S. 39:6-1 et seq., was applicable and the act became operative even though the Director of the Division of Motor Vehicles had not called for proof of financial responsibility." More recently, in the Saffore case, supra, Mr. Justice Heher declared: "And it is of no moment that the Commissioner had not made a demand upon Edwards for `proof' of financial responsibility. Financial responsibility was an imperative requirement of the statute * * *."
Moreover, our courts have held that the perpetration of fraud by the insured upon the insurer does not constitute a valid defense against an injured third person. Atlantic Casualty Insurance Co. v. Bingham, supra; United States Casualty Co. v. Timmerman, 118 N.J. Eq. 563 (Ch. 1935); Farm Bureau Automobile Ins. Co. v. Georgiana, 14 N.J. Super. 459 (Ch. Div. 1951); Brodsky v. Motorists Casualty Ins. Co., 112 N.J.L. 211 (Sup. Ct. 1933); Woloshin v. Century Indemnity Co., 116 N.J.L. 577 (Sup. Ct. 1936); Saffore v. Atlantic Casualty Ins. Co., supra.
In Atlantic Casualty Insurance Co. v. Bingham, supra, the insured had concealed from the plaintiff insurer the fact that he had been involved in two prior accidents and that prior insurance policies had been cancelled by other insurance carriers. Further, in his application for insurance from the plaintiff he fraudulently represented that prior insurance had not been cancelled and that neither his vehicle *526 nor any driver thereof had been involved in an accident within the preceding year. After the occurrence of another accident, the plaintiff brought suit to cancel the policy because of the fraud, making the injured persons parties to the suit. In denying the relief sought, the court following established authority held that despite an assured's breach of warranty or condition precedent, an insurer which issues a policy in conformity with the Financial Responsibility Act is liable to an injured third person, saying: "* * * the purpose of the statute was to forbid the use of roads to certain persons unless they were able to respond to damages in case they caused injury to others, and that a policy which is void ab initio because of a warranty or a condition precedent provides no protection to the public."
In Woloshin v. Century Indemnity Co., supra, the court declared:
"It also seems clear that the beneficiaries of the statute and of the policy provisions required thereby, are the public  those who may be injured in a motor vehicle accident; and the policy remains valid as to third persons injured in such an accident, despite assured's breach of a warranty or condition precedent."
To the same effect is Ambrose v. Indemnity Insurance Co. of North America, 120 N.J.L. 248 (E. & A. 1938).
The question here is: Does the New Jersey or the New York construction of the pertinent statute control? My colleagues conclude that the latter applies. They hold that the policy having been issued in New York, the law of that state governs. I agree that ordinarily a contract is governed by the lex loci contractus; and under the circumstances of this case, were the litigation only between the parties to the contract, the New York act and its interpretation by the courts of that jurisdiction would govern. But I disagree with the conclusion of the majority for two reasons: first, in my opinion a correct construction of Condition 8 of the policy contemplates an application of the New Jersey, and not the New York, imposition of liability; and, second, on the ground of public policy.

*527 (1)
Obviously, from the very nature of automobile liability insurance, the parties know that the vehicle is likely to be operated in various states of the Union and the policy is intended to supply coverage in states other than the issuing state. Condition 8 of the policy reads as follows:
"8. Financial Responsibility Laws. (Coverages A and B). Such insurance as is afforded by this policy for Bodily Injury Liability or Property Damage Liability shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. The Insured agrees to reimburse the Company for any payment made by the Company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph."
The policy undertook to protect against liability which arises out of the ownership, operation and use of the automobile when liability is imposed by the state where injury occurs, not by the state where the policy is issued. The insured having caused bodily injury in this State to a resident of this State, the liability arises out of the operation of the automobile in this State according to the law of this State. Clement v. Atlantic Casualty Ins. Co., 13 N.J. 439 (1953). The liability of the insurer, under the very terms of the contract, is governed by the statutes of this State and the construction thereof by the courts of this State, and not by the laws of the state where the insurance policy was issued.
The majority contend that such a construction would be unreasonable and "assume a gratuitous undertaking by the insurer." I do not think so. The engagement of the company is stipulated in the policy and results from the payment of premiums which fluctuate with accident experience and it is not a gratuitous undertaking.

*528 (2)
It is settled, of course, that the operation of an automobile on the highways of a state is a privilege, and not a right, and that the financial responsibility acts are designed primarily for the protection of the public. Atlantic Casualty Insurance Co. v. Bingham, supra; Woloshin v. Century Indemnity Co., supra; 34 A.L.R.2d 1297, Annotation, "Compulsory Insurance  Cancelation," (1952); 8 Wis. L. Rev. 349 (1933); 16 N.Y.U.L.Q. Rev. 126 (1938); 50 Col. L. Rev. 300 (1950).
As Mr. Justice Heher stated in the Saffore case, supra (21 N.J., at page 309), which concerned the financial responsibility act:
"There is involved here, not a mere regulation of the relations between the insurer and the insured inter partes, but a policy for the protection of the public against irremediable injury for negligence in the operation of motor vehicles on the public highways, and the placing of the burden where it justly belongs. The insurer could refuse to enter into the contract of insurance required by the statute; but, having undertaken to give liability insurance coverage, the statutory terms became a constituent element of the contract. The statute determines the legal operation of the contract."
Yet the majority in their opinion state:
"The insurer could hardly have in fact intended voluntarily and without compulsion to assume obligations for the benefit of the public of all jurisdictions in which the insured may happen to drive, except, of course, in those situations in which it actually tenders its policy to another jurisdiction because its insured has there been denied the privilege of operation by reason of some prior involvement."
Both in New York and in New Jersey a prior accident resulting in damage in excess of $100 or in personal injury requires the furnishing of proof of financial responsibility for the reissuance of a license to operate a motor vehicle. Two factors are involved upon the happening of such an accident  one, the renewal of the operator's license; and, the other, the compulsory furnishing of financial responsibility. The former is personal; the latter is for the benefit *529 of the public who may be injured by the operator. The factors which control obtaining a license to operate an automobile differ from those which determine liability to an injured person under a policy of insurance. One usually obtains his driver's license in only one state, and the issuance, renewal, revocation or reissuance of such license depends upon the regulations of the licensing state. So it may well be that one may not secure a renewal of license if he has had a prior accident and fails to conform with the provisions of the law thereto pertaining. But liability for injury caused by a motor vehicle extends beyond the boundaries of the licensing state and may be imposed by and in the state where injuries may be caused. When a liability policy is issued to a driver who is compelled to furnish proof of financial responsibility because of a prior accident and he causes injury to a person in a state other than the licensing state, it does not seem reasonable to hold that the insurer may escape liability because the prior accident occurred outside the state if liability would have been imposed if such accident had occurred within the state. Suppose a person has had prior accidents in other states and only one here? Can the insurer escape liability to a resident of this State, injured here through negligent operation of the automobile by a non-resident insured, merely because he has had no prior accident in this State? I think not. On the basis of public policy alone, a non-resident automobile owner or operator, while driving in this State, should not have an immunity which a resident does not have. Under our statute and the cases cited above, an insurer of a resident operator would be liable to an injured person under its policy notwithstanding the absence of certification and the perpetration of fraud by the insured upon the insurer. An insurer of a non-resident operator should not be entitled to absolution from the liability which would be imposed if he were a resident and the policy had been issued here.
The majority limits the beneficiaries of the policy to the public of the state where the policy was issued. On principles of justice I cannot reach so restricted an interpretation. *530 While it may be that our Legislature and courts in the determination of public policy or public weal are not to be concerned with members of the public of sister states, we are concerned when they deal with the public of our State. Here, we have before us for consideration an injury to one of our residents by a non-resident who accepted the privilege of using our highways. We should not impose upon the defendant an obligation or burden which we would not impose if a resident were implicated. But we should not do less. For emphasis, I repeat that if a policy had been issued by the defendant to a resident operator under the same facts as here involved, the defendant would under our decisions be held liable under its policy. The same liability should attach when a non-resident driver is involved.
I would reverse.