CASE 110—ACTION BY JOHN C. PRITCHETT AGAINST CONTINENTAL CAS-
UALTY COMPANY ON AN ACCIDENT POLICY.—APRIL 13.

# Pritchett v. Continental Casualty Co.

APPEAL FROM FAYETTE CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS.    REVERSED.

ACCIDENT INSURANCE—PAYMENT OF PREMIUM—ASSIGNMENT OF WAGES
—INSURED'S LEAVING EMPLOYMENT—NOTICE TO INSURER.

Held:   1. An application for accident insurance bound insured to
pay the premium in installments—the first on January 1, 1903,
and one the same day of each of the next succeeding four
months in default of which all rights should terminate, to be
reinstated by tendering payment; no claim for injury to be
made between forfeiture and reinstatement.  The insured agreed
that the collection of any assignment made by him in lieu of
the payments should be at his own risk.  On the same day
he executed to the insurer an order on the paymaster of the
railroad employing him, assigning the amount of the premium
out of his claim for past and future services, payable in five
monthly installments; the first to be deducted from his wages
for December, 1902; the second to be deducted from his wages for
January, 1903, etc.  In this order he agreed that failure to de-
duct any installment by the paymaster was at his risk, and
that, if any installment were not deducted, all rights under
the policy should be lost.  He also agreed that, if he were
discharged before the first installment became due, all rights
under the policy should cease, unless he notified the insurer's
secretary within three days, and remitted the first installment.
The policy issued on the same day, made the application a
part thereof, and provided that no indemnity should accrue
subsequent to any default in premiums, and previous to the
reinstatement of the policy.  Insured was discharged Decem-
ber 18, 1902; the first installment being deducted from the
wages then paid him.  No notice or remittance was sent by
him to the insurer.  He was injured on January 29, 1903, and
on January 31st his former employer remitted the first install-
ment to the insurer.  HELD, that the insurance was not for-
feited.

FORMAN & FORMAN, for appellant.

### POINTS AND AUTHORITIES.

1. The general demurrer to the answer should have been sustained:

(a) Because the first provision in the "paymaster's order" plead by defendant (appellee here) is in conflict with the provisions of the policy issued to appellant and with his application made therefor, and that construction should be adopted which will cover the loss and any doubt or ambiguity in the contract should be resolved in favor of appellant. American Accident Co. v. Reigart, 94 Ky., 549; Mut. Ben. Life Ins. Co. v. First Natl. Bank, 24 Rep., 682; Traveler's Ins. Co. v. Dunlap, 52 Am. St. Rep., 355; Dover, &c. Co. v. A. F. Ins. Co., 65 Am. St. Rep., 264; Matthews v. Am. Ins. Co., 61 Am. St. Rep., 627; Turner v. Fidelity, &c. Co., 67 Am. St. Rep.; 428; Burliner v. Traveler's Ins. Co., 66 Am. St. Rep., 49.

(b) The construction of the contract contended for by appellant is more reasonable and fairer than that contended for by appellee; and is more consonant with the presumption that they' dealt with each other in good faith. The construction contended for by appellee causes an *hiatus* in the contract from the 7th day of January until the payment of the second installment, and would cause the policy to run beyond the date fixed for its expiration.

(c) Because *no plea of default* in the payment of any installment of the premium is made, and none existed, when the accident occurred. When appellant was injured no payment was due or payable to appellee, and it received all to which it was entitled at the time of the injury. When the injury happened, the relationship of the parties was changed from that of insurer and insured to that of debtor and creditor. The excess was in favor of appellant, and he was relieved from paying to appellee, or to the railway company the second installment to be held subject to the "paymaster's order." Even if the railway company had had in its hands the amount of the second installment belonging to appellant, he would have had the right to stop its payment to appellee.

(d) No forfeiture was incurred under the second provision in the "paymaster's order," plead by appellee, for appellant left in the hands of the railway company, subject to the order, out of his December wages, the amount of the first installment premium, and same was paid to and received by appellee in January when it became due and payable, and no other install-

Pritchett v. Continental Casualty Co.

ment ever became *due* before the happening of the injury. The *purpose* of the provision was to scure the payment of the first premium installment and is limited by its express language to the *first* installment *alone*. The end for which it was designed was accomplished, and it thenceforth became nugatory.

(e) If a forfeiture was incurred (which is denied) under the said second provision, it arises out of a breach of a *condition subsequent* which was not material to the *nature* of the risk, but affected only its continuation. The design of the condition and purpose of its insertion was to strengthen and add efficacy to a security for debt. A breach thereof can be easily compenstated for with absolute certainty and without injustice to appellee. The measure of damages is fixed by the contract, it being the annual premium. No damages, however, resulted as appellee got all it was entitled to up to the happening of the accident. Forfeitures incurred by breach of *condition subse-quent*, whose purpose was to secure payment of a debt, or the performance of some act, or the enjoyment of some right or benefit, will be relieved against by compensation being made therefor, because the payment, performance or enjoyment are considered as the *real thing intended by the agreement*, and the forfeiture as only an accessory. Pomeroy's Eq. Jurisprudence, — Ed., secs. 433, 456; and note therein citing, Steele v. Branch, 40 Cal., 3; Henry v. Tupper, 29 Ver., 358; also note 86 Am. St. Rep., 48; Worthem v. Ratcliffe, 42 Ark., 330; Allison v. Coche, 21 Ky. Rep., 434.

(f) Even if a forfeiture was incurred under said provision, the conduct of appellee in accepting, retaining and not offering to pay back any of the unearned part of the premium collected with full knowledge at the time of filing its answer herein of appellant's discharge from the Norfolk & Western Railroad Company, is tantamount to an express waiver of its right to claim or insist upon the penalty, as the provision in question does *not* provide for a forfeiture to appellee of premiums collected which carry the policy beyond the time the forfeiture is claimed to have taken place. Appellee claims the forfeiture was incurred December 21, 1902, yet admits that the premium collected and retained by it was sufficient to carry the policy to January 7, 1903, seventeen days after the alleged forfeiture. No offer is made to return the amount collected for this seventeen days. It is well settled that courts in furtherance of justice will relieve against penalties and forfeitures when there is the slightest circumstance in the conduct of the party claiming it to indicate that there was or has been a waiver thereof.

2. The demurrer to the reply should have been overruled:

(a) Because the contract sued on was made in and must be construed by the law of Illinois, and under the statute then. and now in force in Illinois it is mandatory that the *policy* should state the *entire* contract between insurer and insured. Both the provisions plead by appellee in bar are contained in. the "paymaster's order," and do not appear in the policy; in. fact are in conflict with the stipulations of the policy. Appel-- lant had no knowledge of them and could not advise himself of them by reference to the policy, the only evidence furnished. him by appellee of the contract, therefore, appellee is estopped. from pleading same, otherwise it profits by its own wrong and. violation of the statute. See note 55 Am. St. Rep., 52, citing Ford v. Buckeye Co., 6 Bush, 135; North Hampton Co. v. Tut-- tle, 40 N. J. L., 476; Hyde v. Goodnow, 3 N. Y., 206; Western. v. Genesee Co., 12 N. Y., 258; Tayloe v. Fire Ins. Co., 9 How., 390.

(b) The State of Illinois had the right to impose such terms: and conditions upon foreign and domestic insurance companies: desiring to transact business therein as it desired. Daggs v. Orient Ins. Co., 35 L. R. A., 227; Cravens v. N. Y. Life Ins. Co., 71 Am. St. Rep., 628; Swing v. Munson, 71 Am. St. Rep., 772.

BRECKINRIDGE & SHELBY, FOR APPELLEE.

## POINTS AND AUTHORITIES.

1. The contract of insurance sued upon was terminated by the· failure of the plaintiff to notify the defendant's secretary of the: fact of his discharge from the N. & W. Railway Company with-- in three days after such discharge, and to remit the premium. for the first insurance period. Bane v. Travelers' Ins. Co., 85 Ky., 682-5; Reed v. Same, 43 S. W., 433; 16 Am. & Eng. Ency. Law (2d ed.), 920.

2. Where the contract is terminated by an act of the insured. himself the company does not waive its right to rely upon such termination by its receipt thereafter of the premium for the in-- surance period during which the termination took place. Burner v. German American Ins. Co., 103 Ky., 374; 16 Am. & Eng. Ency. Law (2d Ed.), 941; Smith v. Continental Ins. Co., 6: Dak., 433 (43 N. W., 810); Schimp v. Cedar Rapids Ins. Co., 124 Ill., 356 (16 N. E., 229.)

3. Where a contract of insurance is terminated by an act of the insured the company is not required, in pleading such fact, to tender back the premium which it has received or any part

of same. 16 Am. & Eng. Ency. Law (2d Ed.), 954; Joyce on Insurance, secs. 1407, 1420; Farmers' .Mut. Ins. Co. v. Home F. Ins. Co., 54 Neb., 740; Colby v. Cedar Rapids Ins. Co., 66 Iowa, 577 (24 N. W., 54); Pratt v. N. Y. Central Insurance Co., 55 N. Y., 511.

4. The averments of the reply do not show that the insurance contract in question was made in the State of Illinois.

5. The statute of Illinois relied on in the reply is not applicable to policies issued by companies other than those incorporated under that statute, and, therefore, does not embrace the policy in suit, which was issued by the defendant, an Indiana corporation.

6. Even if the contract of insurance here were an Illinois contract, and the statute of that State were applicable to same, the statute relied on does not prohibit nor make void such part of the contract as may not be written out in full on the face of the policy, the provision in question being merely directory.

7. The policy sued upon provides upon its face that it is issued in conformity with, and subject to the law of Indiana, and it is competent for the parties to the contract to stipulate that it shall be construed, both as to its validity and as to its terms, by the law of any State which they may select: Note to McGarry v. Nicklin, 55 Am. St. Rep., 53.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

On November 7, 1902, appellant, Pritchett, who was a locomotive engineer in the service of the Norfolk & Western Railroad Company, at Columbus, Ohio, applied to appellee for an accident policy. The application, among other things, contained the following:

"I agree to pay therefor (that is, for the insurance applied for) $51.84 in equal installment payments of $10.37 without notice; the first installment payment of $10.37 to be paid on the 1st day of January, 1903, and one payment of like amount due the same day of each of the next succeeding four months. In default of any payment being made by 12 o'clock noon, standard time of the day when due, as above specified, all my rights under said policy, and the rights of the beneficiary thereunder, shall then and thereby become

void, and can only be reinstated by tendering payment at the
General Office, and, if accepted, the reinstatement takes effect
from and after the date of such payment, and no claim can
be made between the dates of such forfeiture and such rein-
statement. Any and all payments as above agreed may be
deducted from any claim I may have on account of my in-
surance.

"I agree that any order or assignment given by me to the
company in lieu of the installment payments above stipulated
for, shall be and form a part of my contract with the com-
pany, and that the company does not accept or incur any
responsibility for the collection thereof."

On the same day he signed and delivered to it a paymas-
ter's order, which reads as follows:

"In lieu of payments provided in my application for ac-
cident insurance in the Continental Casualty Company of
Chicago, Illinois, I hereby assign to said company the sum
of $51.84 of my claim against the N. & W. Ry., for services
rendered and to be rendered by me, due and payable in five
monthly installments as follows:  First installment of $10.37,
to be paid and deducted from my wages for the month of
December, 1902; second installment of $10.37, to be paid and
deducted from my wages for the month of January, 1903;
third installment of $10.37, to be paid and deducted from
my wages for the month of February, 1903; fourth install-
ment of $10.37, to be paid and deducted from my wages
for the month of March, 1903; fifth installment of $10.37.
It is understood and agreed that the installments above pro-
vided for, respectively, shall provide for my insurance under
a policy to be issued to me by said company and bearing
even date and number herewith, for ratable periods, to-wit:
The first installment, two months; the second installment,

two months; the third installment, three months, and the
fourth installment, five months, in their successive order
as herein given; with the further understanding and agree-
ment that if the first, second, third and fourth installments
be paid when due, respectively, the fifth installment shall
be paid by the railway company, provided I remain in the
service of said railway company when same becomes due.

"I agree that failure to deduct any of the above installments
by said paymaster, from any cause, is at my risk, and if
any installment be not deducted as above provided, all my
rights and rights of my beneficiary under said policy issued
to me shall be void. I hereby waive for myself and my bene-
ficiary under said policy any notice of the payment or non-
payment of any installment provided for, and I further agree
that in case of default upon any of the above installments,
the same may be deducted from my wages in any succeeding
month, at the option of said Continental Casualty Company,
but such deduction shall only reinstate me from the date
of such deduction and for the insurance covered by it.

"I agree that should I be discharged from or cease to be
in the service of said railway system before the first of said
installments becomes due, then all my rights and rights of
my beneficiary in said policy shall immediately cease unless
I notify the secretary of said Continental Casualty Company
in writing within three days after leaving said service, and
remit said installment  with said notice, and said  rein-
statement shall take effect only from the date of said com-
pany's receipt therefor.  No agent shall alter or waive any
of the conditions of this order."

The papers were forwarded to the company, and at its
office in Chicago it issued a policy of date November 7, 1902,

insuring Pritchett for 12 months, among other things, in the sum of $750 against the loss of a foot. The policy contained this clause:

"The consideration for this policy is the warranties and agreements contained in the application herefor, which is made a part hereof, and the paying when and as authorized by the company in writing of the premium specified on the reverse hereof, or in the insured's assignment of wages or order on the paymaster therefor.

"It is further agreed that no indemnity shall accrue for any injury sustained subsequent to any default in the payment of premiums as herein provided and previous to any reinstatement of this policy which may subsequently be effected."

Pritchett continued in the service of the Norfolk & Western Railway Company until December 18, 1902, when he was discharged by it. He then received his wages due him from the company, except the sum of $10.37, which he left in the hands of the paymaster for appellee, pursuant to the order he had given, quoted above; but he did not within three days after leaving the service notify the appellee in writing, and remit to it the first installment of his premium. He then entered the service of the Cincinnati Southern Railway, and at Lexington, Ky., on January 29, 1903, had his foot cut off in an accident. On January 31st the Norfolk & Western Railway Company paid appellee the $19.39 which it had retained out of Pritchett's December wages. On these facts, Pritchett sued appellee to recover the indemnity of $750, and it pleaded in defense of the action that he had ceased to be in the service of the Norfolk & Western Railway Company before the first installment of his premium became due, and that he had failed to notify it in writing

within three days after leaving the service, or to remit the
first installment, with the notice; setting out the clause of
the paymaster's order providing that in this event the policy
should immediately cease, and alleging that the policy was
not in force at the time of the accident in which the plaintiff
lost his foot. The court held the plea good, and dismissed
the petition. The plaintiff appeals.

The application, the paymaster's order, and the policy are
all dated November 7th. Each of the papers was manifestly
made with a view to the other two and all three must be
read together, as one instrument, in determining their mean-
ing. While it is stipulated in the application that the first
installment of the premium is to be paid on the 1st day of
January, 1903, it is stipulated in the paymaster's order that,
in lieu of the payments provided for in the application, the
insured assigns to the company his claim against the Norfolk
& Western Railway for services rendered and to be rendered
by him in five monthly installments; four to be deducted
from his wages for the months of December, January, Feb-
ruary, and March; the fifth installment to be paid later. The
insured was not, therefore, in default in the payment of the
first installment of the premium, and no defense is made
by the company on the ground that this money was not paid
to it by the railway company until January 31st. For, the
assignment of the claim on the railroad company under the
paymaster's order being in lieu of the payments specified in
the application, the company took the assignment, and agreed
to look to the railroad company for the money provided
the assured left the amount out of his December wages
in the hands of the railroad company for it. It is stipulated
in the order that the failure of the paymaster to deduct any
of the installments from his wages is at his risk, and, if

any installment is not deducted, all rights under the policy shall cease; but there is no provision as to the time when the railroad company is to pay appellee, and the necessary effect of the contract is that the insured is not affected by the delay of the railroad company in paying over the money after it has been deducted. When, therefore, appellant was hurt, he was not in default in the payment of any part of the premium. The second installment was not due until February 1st. He had done all he was required to do as to the first installment, if he had remained in the service of the Norfolk & Western Railway Company. But he had not remained in the service of that company, and the question to be determined is what effect shall be given to the clause of the contract providing that, if he left the service of the railroad company before the first installment became due, then all rights under the policy should cease, unless he notified appellee in writing within three days after leaving the service, and remitted that installment with the notice. It will be observed that this clause only refers to his leaving the service of the railway company before the first installment became due. If he left the service of the company after the first installment became due, it has no application. In that event he was required to give no notice of his leaving the service of the railroad company in order to preserve his rights. It was certainly not contemplated by the contract that, when the railroad company retained in its hands the first installment, the insured was also to remit the amount to appellee, with a notice stating that he had left the service of the railroad company. While the proper construction of the contract is a matter of difficulty, taking it as a whole we think it evident that this clause was only inserted as a security for the payment of the first installment. The con-

tract is an unusual one.   It took effect from November 7th, and yet nothing was to be paid upon it until the insured's December wages were earned, and then he was to leave in the hands of the railroad company the amount of the first installment.   If he had left the service of the railroad company before the month of December, appellee would have had no security for the payment of its money, and yet would have been compelled to carry the risk until default was made in the payment of the first installment, but for this clause of the contract.   It therefore required him, if he left the service of the company, at once to give notice to it of that fact, and immediately pay the first installment. It is stipulated in the order not only that the failure of the paymaster to deduct the installments from his wages was at his risk, but also that, if any installment was not deducted as therein provided all rights under the policy should be void. When, therefore, Pritchett settled with the railroad company on December 18th, he was bound to leave the amount of the first installment in its hands, or lose all rights under the policy.   When the deduction was made, the railroad company held the money for appellee.   The contract is silent as to when the deduction from his wages should be made, and necessarily means that this should be done when his wages for the month should be settled.   It is immaterial whether the settlement was made before or after the 1st of January.   The first installment became due out of his wages when his wages for December were settled by the railroad company; and, if it was not then deducted, the policy ceased.   It is not stipulated that, if he should be discharged before the first installment was paid, then notice in writing in three days must be given, accompanied with a remittance of the first installment.   The words "before the first of said installments

becomes due" are· evidently used with reference to· the preceding part of the order,·by which his wages, so· far as necessary, are assigned to appellee in lieu of the payments provided for in the application. The meaning· of the clause is, if he should leave the service of the railroad company ·without leaving the first installment in its hands, he must then give the notice, and remit with it ·the amount, for in that event appellee would have no security for its money.. To hold that he lost his insurance unless he. left the amount in the hands of the railroad company, and! also· lost· it if he did not, in addition, remit the· amount to· appellee himself in three days, would be to force him to.pay this installment twice to· preserve his rights. ·

Contracts must be construed reasonably, and, in case of doubt, conditions like this are construed against the insurer, for he prepares the contract, and his liability should not be defeated by doubtful phrases. The· purpose of the contract is indemnity, and the insured will not be adjudged to have lost his indemnity unless this is the fair meaning of the contract. The giving of the notice that he had left the service of the railroad.company and the remitting of the amount of the first installment with the notice, stand together. He was not required to· give the notice unless he was also· required to remit the amount of the first installment with it. There was no necessity·for him to remit to· appellee money which by the terms of the contract he had left in the hands of the railroad company for it. And as the remittance was to accompany the notice, when no· remittance was required, no notice need be given. · The notice only went with the remittance. The· policy is silent upon the subject. The condition is inserted only in the·order assigning the wages, and apparently relates merely thereto. It does not appear to have been· regarded as material what railroad company the insured worked

for, for no notice was required if he left the service of the railroad company after the first installment became due; thus showing that the insurer intended to guard only against the loss of its security for the payment of the first installment.

In Lyon v. Travelers' Insurance Co. (Mich.) 54 Am. Rep., 357, the court said of a similar contract, where the railroad company had not paid over the money: "It is true, non-payment of the premium for any one of the periods suspends the enforcement of the policy; but the insured, in a case like this when he has provided for the payment when due, and the premium made is in the possession of the defendant, or under its control, payment will be deemed to have been made until the insured is notified by the defendant to the contrary."

In Fidelity & Casualty Co. v. Johnson (Miss.) 17 South., 2, 30 L. R. A., 206, the court, in response to a similar defense, said: "The assured's duty as to the payment was fully performed when he left the installment in the hands of the paymaster." See, to same effect, 1 Cyc., 242; Eury v. Standard Ins. Co. (Tenn.) 14 S. W., 929, 10 L. R. A., 534. The case of Bane v. Travelers' Insurance Co., 85 Ky., 677, 9 R., 211, 4 S. W., 787, was where the insured was in default in the payment of his premiums. So, also, are the cases of McMahon v. Travelers' Ins. Co., 77 Iowa, 229, 42 N. W., 179; Landis v. Standard Ins. Co., 6 Ind. App., 502, 33 N. E., 989. We therefore conclude that the clause relied on by the defendant does not defeat a recovery, where the amount of the first installment was deducted from the December wages, and left in the hands of the railroad company for appellee.

The contract sued on, not being a Kentucky contract, is not affected by the provisions of our statute.

Judgment reversed, and cause remanded for further proceedings consistent with this opinion.

Petition for rehearing by appellee overruled.