HANNAH BUZZONE AND GEORGE BUZZONE, HER HUS-
BAND, PLAINTIFFS-APPELLANTS, v. HARTFORD ACCI-
DENT AND INDEMNITY COMPANY, A CORPORATION
OF THE STATE OF CONNECTICUT, DEFENDANT-RE-
SPONDENT.

Argued February 4, 1957—Decided February 25, 1957.

448

*Mr. Hymen B. Mintz* argued the cause for the plaintiffs-appellants (*Mr. Sol Herships,* attorney).

*Mr. Samuel A. Larner* argued the cause for the defendant-respondent (*Messrs. Budd, Larner & Kent,* attorneys).

The opinion of the court was delivered by

BURLING, J. Plaintiffs, husband and wife, were victims of an automobile accident in this State in 1951. They recovered a judgment of $40,000 against one Fred Mancini, a New York resident, the driver of the other vehicle. The judgment remained unsatisfied and the instant suit was commenced against Mancini's insurer, defendant Hartford Accident and Indemnity Company, a corporation of the State of Connecticut. Defendant succeeded in the trial court and the Superior Court, Appellate Division, affirmed on appeal, 41 *N. J. Super.* 511 (*App. Div.* 1956), Judge Freund dissenting. Our jurisdiction is grounded in *N. J. Const.* 1947, *Art.* VI, *Sec.* V, *par.* 1(*b*) ; *R. R.* 1:2–1(*b*).

Fred Mancini is an assumed name. The true name of the New York resident is Fabrizio Inghilleri. In 1948 he was involved in an accident in New York and in accordance with that law his driver's license was suspended pending proof of financial responsibility. The proof was not forthcoming. Instead, Inghilleri assumed the name of Mancini and obtained a license thereby. He was also successful in securing insurance coverage from defendant under the fictitious name. The policy was never certified as proof of financial responsibility.

The policy contained the following provision :

"8. Financial Responsibility Laws. (Coverages A and B.) Such insurance as is afforded by this policy for Bodily Injury Liability or Property Damage Liability *shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during*

*the policy period*, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. The Insured agrees to reimburse the Company for any payment made by the Company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph." (Emphasis supplied.)

Plaintiffs' contention is that by virtue of this "conforming clause" (See Standard Provisions for Automobile Policies, Condition 4, Insurance Policy Annotations, Section of Insurance Law, A. B. A. 1941) the laws of New Jersey and New York relating to the financial responsibility of motor vehicle operators are applicable and that the policy here is a "required" policy which, by statutory impact, deprives the insurer of any defenses which it might otherwise have in consequence of Inghilleri's fraud.

The insurer denies that our law is applicable in determining the policy status; that under the New York law the policy must be "certified" to the proper public authority as proof of financial responsibility before the insurer is denied any defenses arising from a contractual breach of the insured.

A majority of the Appellate Division, Judges Weintraub (now a Justice of this court) and Coolahan, held the New York law applicable and interpreted that law to require certification of the policy as a condition precedent to its status as a required policy. The dissenting judge interpreted the "conforming" clause as responding to the laws of the state where the accident occurred and, in the alternative, that the New York law was opposed to the public policy of New Jersey and should not be applied in any event.

Three questions require attention:

Under what law are the insurer's rights and liabilities to be determined? (Point I)

If the law of New York is applicable, does the public policy of New Jersey resist against its application? (Point III)

Does the applicable law deprive the insurer from asserting policy defenses against the plaintiffs? (Point II)

I.

■ We think it too settled to be questioned that the rights and liabilities of the insurer under the policy and the statutory impact thereon are to be determined by the law of the state where the contract was made. "The question of what is the obligation imposed by a contract of insurance, what are its terms and provisions, has usually rightly been held to be governed by the law of the place of contracting." 2 *Beale on Conflict of Laws,* sec. 346.4, *p.* 1210 (1935). See *Universal Ins. Co. v. Millside Farms,* 119 *N. J. L.* 534 *(Sup. Ct.* 1938); *Manhattan Life Ins. Co. v. Manger,* 66 *F. Supp.* 670 *(D. C. N. J.* 1946); *Pritchett v. Continental Cas. Co.,* 117 *Ky.* 923, 80 *S. W.* 181 *(Ct. App.* 1904); *Boisvert v. Boisvert,* 94 *N. H.* 357, 53 *A. 2d* 515 *(Sup. Ct.* 1947). The liabilities arising from the policy are to be distinguished from the legal consequences in tort which stem from the occurrences of the risk insured against. *Clement v. Atlantic Casualty Ins. Co.,* 13 *N. J.* 439 (1953), is of the latter variety, and note *Boisvert v. Boisvert, supra.* Compare *Watson v. Employers Liability Assur. Corp.,* 348 *U. S.* 66, 75 *S. Ct.* 166, 99 *L. Ed.* 74 (1954).

■■ The "conforming provision" of the policy does not operate to implant therein the financial responsibility law of the state where the accident occurred. This is a standard policy provision and so far as our law is concerned Inghilleri was not a person from whom New Jersey could require proof of financial responsibility because he had never incurred the compulsion of the New Jersey law. See *Farm Bureau Automobile Ins. Co. v. Georgiana,* 14 *N. J. Super.* 459, 468 *(Ch. Div.* 1951); *Hartford Accident & Indemnity Co. v. Breen,* 2 *App. Div. 2d* 271, 153 *N. Y. S. 2d* 732 *(App. Div.* 1956); *Earle, "The Motor Vehicle Liability Policy Under Financial Responsibility Laws,"* No. 369 *Insurance Law J.* 678, 684 (1953). Our law reacts to non-residents involved in accidents within New Jersey, *R. S.* 39:6–25, *R. S.* 39:6–35, 36, but in the absence of this factor New Jersey residents are dependent upon the integrity of the financial responsi-

bility laws of sister states to successfully persuade their residents to obtain insurance coverage.

The court below was correct in looking to the law of the State of New York.

## II.

Every state in the Union now has some type of legislation directed to the problem of the financially irresponsible motorist. *Analysis of Security-type Motor Vehicle Safety Responsibility Laws* (Association of Casualty and Surety Companies—1955). These laws are a strong pronouncement of the public desire that all motorists voluntarily obtain insurance in order that persons who are injured at their hands may be compensated by something more than a bare judgment. The persuasive influence is manifested by attaching serious consequences to those who choose to remain uninsured and become involved in a highway accident. Formerly an unsatisfied judgment or accident involvement was the point at which financially irresponsible drivers were set apart from others. But this only required proof of financial responsibility as to *future* accidents, and thus the common terminology of "first-bite" laws. See *L.* 1929, *c.* 116, repealed *L.* 1952, *c.* 173, *sec.* 34.

Today these laws require the immediate deposit of security from uninsured persons involved in an accident causing bodily injury or property damage (in varying minimal amounts) on pain of license suspension. See, *e. g., R. S.* 39 :6–25. In addition, many states also require proof of financial responsibility to respond to damages arising from future accidents. This proof usually takes the form of a motor vehicle liability policy which, as we use the term, connotes a required policy through statutory compulsion, and in this sense differs from automobile liability insurance voluntarily contracted. See generally, 5 *Couch, Cyclopedia of Insurance Law, sec.* 1175(*i*) (1929); *Collins, "Implementation of Public Policy Against the Financially Irresponsible Motorist,"* 19 *Brooklyn L. Rev.* 11 (1953); *Note,* 33 *Iowa L. Rev.* 522 (1948).

A motor vehicle liability policy, required of the driver by statutory compulsion, has the significant feature under these laws of depriving the insurer of a defense which it might otherwise have in a suit on a voluntary policy. *R. S.* 39:6–48(*a*) provides, *inter alia:*

"The liability of a company under a motor vehicle liability policy shall become absolute when loss or damage covered by the policy occurs * * *."

The New York statute contains an identical provision. *N. Y. Vehicle and Traffic Law, McKinney's Consol. Laws,* c. 71, sec. 94–*q*(*i*)(1). Under the ordinary policy the insurer can oppose recovery for any breach thereof by the insured and thus defeat a just claim of the injured plaintiff. Under such a policy, the rights of an injured party against an insurer are no greater than those of the insured. *Kindervater v. Motorists Casualty Ins. Co.,* 120 *N. J. L.* 373 (*E. & A.* 1938); *Seltzer v. Indemnity Ins. Co.,* 252 *N. Y.* 330, 169 *N. E.* 403 (*Ct. App.* 1929). Thus the very type of policy (voluntarily contracted) which financial responsibility laws persuade motorists to obtain do not make the insurer's liability absolute. Injured plaintiffs must, unfortunately, bear the consequences of the insured's breach. Absolute liability of the insurer is the exception rather than the rule. Note, 27 *N. Y. Univ. L. Rev.* 817, 826 (1952). In those few states where all drivers are *required* by statute to have insurance coverage the insurer's liability may be absolute. *Fallon v. Mains,* 302 *Mass.* 166, 19 *N. E.* 2d 68 (*Sup. Jud. Ct.* 1939); *Continental Ins. Co. v. Charest,* 91 *N. H.* 378, 20 *A.* 2d 477 (*Sup. Ct.* 1941). New York has recently enacted a compulsory type law. *L.* 1956, *c.* 655, effective February 1, 1957 (New York Laws), *Vehicle and Traffic Law,* § 93 *et seq.*

Plaintiffs contend the instant policy to be a "required" coverage, thus depriving the insurer of its defense based upon Inghilleri's fraud. The crux of the conflict is the status of the policy.

The inclusion of the "conforming" provision in the policy does not *ipso facto* engage the gears of the statute and consequent absolute liability. *Cohen v. Metropolitan Casualty Ins. Co.,* 147 *Misc.* 690, 233 *App. Div.* 340, 252 *N. Y. S.* 841 (*App. Div.* 1931); *Letson v. Sun Indemnity Co.,* 264 *N. Y. S.* 519 (*Sup. Ct.* 1933); *Rasinski v. Metropolitan Casualty Ins. Co.,* 117 *N. J. L.* 490 (*E. & A.* 1937); *McLaughlin v. Central Surety & Ins. Corp.,* 11 *N. J. Misc.* 440 (*Sup. Ct.* 1933); *State Compensation Ins. Fund v. Bankers Indem. Ins. Co.,* 106 *F.* 2d 368 (*9 Cir.* 1939). But see *Farmers Ins. Exchange v. Ledesma,* 214 *F.* 2d 495 (*10 Cir.* 1954). The insured party must at least be within the statutory class of financially irresponsible drivers. Under our prior law (*L.* 1929, *c.* 116; *R. S.* 39:6–1 *et seq.*) this alone was sufficient. The insurer had a choice of accepting the risk of a person within the class or not, *Steliga v. Metropolitan Casualty Ins. Co.,* 113 *N. J. L.* 101 (*Sup. Ct.* 1934), affirmed 114 *N. J. L.* 156 (*E. & A.* 1935), a rationale later extended to bind the insurer where the applicant, as here, concealed his true status under the law. *Atlantic Casualty Insurance Co. v. Bingham,* 10 *N. J.* 460 (1952).

An additional factor evident in many state laws is that the insurer must certify that the policy was issued for the benefit of the person required to furnish proof of financial responsibility. The defendant insurer's position is that the instant policy was not so certified to the Commissioner of Motor Vehicles of New York and therefore it is not a required policy under New York law. It is clear from our study (*N. J. S.* 2A:82–29) that the New York Safety-Responsibility Act, Vehicle and Traffic Law, *Art. 6B, sec.* 94 *et seq.,* is designed to subject insurers to absolute liability only where they are aware of the status of the applicant as a member of the statutory class.

Absolute liability arises only upon a "motor vehicle liability policy," *sec.* 94–*q*(*i*)(1), and this type policy is defined as "an owner's or an operator's policy of liability insurance certified as provided in section ninety-four-n

\* \* \* as proof of financial responsibility." *Section* 94–*q*(*a*). *Section* 94–*n*(*a*) states, *inter alia:*

"Proof of financial responsibility may be made by filing with the commissioner the written certificate of any insurance carrier duly authorized to do business in this state, certifying that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of financial responsibility. Such certificate shall give the effective date of such motor vehicle liability policy, which date shall be the same date as the effective date of the certificate, \* \* \*."

It is unnecessary that the certificate be *filed* with the commissioner—it is sufficient if the certificate is prepared by the insurer. *Cf. Vrabel v. Scholler, 369 Pa.* 235, 85 *A.* 2*d* 858 (*Sup. Ct.* 1952). The effective date of the certificate is geared to the date of the policy, and this may take place before, filing the certificate as proof. But it is abundantly clear that the statute transforms the policy only when the insurer accepts the risk with its eyes open, and that was not the case here.

There is no precise decisional authority of the New York courts to indicate to the contrary and whatever *dicta* exists has been amply portrayed in the decision below. It does not support plaintiffs' case. Plaintiffs have not cited any case arising under a similar statute which would sustain their position and our search has not revealed a comforting precedent. Indeed, those cases which gravitate about the issue are alien to their position. *State Auto Mut. Ins. Co. v. Sinclair,* 96 *F. Supp.* 267 (*D. C. W. D. Ky.* 1950); *State Farm Mut. Auto. Ins. Co. v. Sharpton,* 259 *Ala.* 386, 66 *So.* 2*d* 915 (*Sup. Ct.* 1953); *Kentucky Farm Bureau Mut. Ins. Co. v. Miles,* 267 *S. W.* 2*d* 928 (*Ky. Ct. App.* 1954); and see cases cited below, 41 *N. J. Super.,* at *page* 523.

## III.

The dissenting judge below thought that "on the basis of public policy alone, a non-resident automobile owner or

operator, while driving in this state, should not have an immunity which a resident does not have," and that we should not impose a lesser burden upon the insurer of a non-resident than we would upon the insurer of a New Jersey resident. In short, New Jersey residents should be as fully protected against financially irresponsible drivers from other states as non-residents are from financially irresponsible New Jersey operators.

The non-resident driver is as fully answerable for injuries which he causes upon our highways as any other. The question is whether that driver's insurer, who has a valid defense under the law applicable to the insurance contract, may assert it in our courts.

It has been previously pointed out that New Jersey law has no compulsion upon this New York driver nor the contract of insurance issued him in that state because he had not previously been involved in an accident upon our highways. Our Legislature has chosen to rely upon the financial responsibility laws of other states in protecting New Jersey residents from non-resident motorists who have demonstrated their irresponsibility elsewhere. We can acknowledge, along with the dissenting judge, that there might well be a legitimate interest in protecting the welfare of New Jersey citizens under all circumstances, but the answer would seem to be that this has not been accomplished through legislation. The task is one for the lawmakers and not the courts.

The New York legislature has stated in positive terms that absolute liability is to fall only upon informed insurers —those who are aware of the risks they are called upon to undertake. This is the statutory policy upon which the formality of certification by the insurer is reckoned, for it is only certificated policies which bear the impact of absolute liability. In the absence of this condition precedent, the insurer may assert the same defenses which it would have upon any policy voluntarily contracted.

(It may be noted that the benefits of a motor vehicle liability policy (i. e., a required policy) under the New York

458

law are bestowed upon residents and non-residents alike. *Sec.* 94–*q*(*b*)(3) and (*c*) require risk coverage over the operation of the motor vehicle anywhere in the United States or Canada.)

Are we to disregard our own statutory law along with that of New York in arresting plaintiffs' plight? Conflict principles would soon lose the quality of consistency and the rights of litigants would be as diverse as the creative imagination of 48 separate states were the courts to accept the "public policy" argument where the statutes of the competing states do not afford any relief to the plaintiffs.

■ At 3 *Beale on Conflict of Laws, supra, p.* 1651, in discussing the role of "public policy" in determining the applicable law, the noted author states:

"There is, moreover, in the law of every jurisdiction a strong policy in favor of recognizing and enforcing rights and duties validly created by a foreign law. These considerations would seem to indicate that the application of the rule of this section should be extremely limited. This is especially true as between the states of the United States, for not only is there little or no variation in the fundamental policies of their respective laws, but here, even more than elsewhere, a uniform enforcement of right is greatly desirable."

In this sense the more fundamental policy should be that rights lawfully vested should be recognized everywhere. *Loucks v. Standard Oil Co. of New York,* 224 *N. Y.* 99, 120 *N. E.* 198, 202 (*Ct. App.* 1918).

■ The proposition is this in New York: An insurer will not be held absolutely liable upon its policy unless it is aware of its degree of liability. Is this so repugnant to New Jersey's attitude toward the insurer and the injured as to disallow a defense which the defendant would have in the New York courts? We think not.

It is one thing to deny the enforcement of a foreign cause of action in our courts on the basis of "public policy." It is quite another thing to deny a defendant a defense given him by the foreign law which is clearly applicable under our conflict principles. We then become a favorite

and fortuitous plaintiff's forum and mere jurisdiction over the defendant foretells his doom. In this case it would impose a liability upon the insurer not recognized under the law governing its rights, and we immediately implicate considerations of due process under the federal constitution. *Home Ins. Co. v. Dick,* 281 *U. S.* 397, 50 *S. Ct.* 338, 74 *L. Ed.* 926 (1930).

In the latter case, it was a denial of due process to the insurer for Texas (the forum) to refuse to recognize a one-year time limitation on the right to sue contained within the policy and valid under the foreign law. Texas had a statute which opposed a shorter limitation than two years. A similar pattern of decision is presented in *Hartford A. & I. Co. v. Delta Pine & Land Co.,* 292 *U. S.* 143, 54 *S. Ct.* 634, 78 *L. Ed.* 1178 (1934). Compare *Watson v. Employers Liability Assur. Corp., supra; David v. Veitscher, etc., Gesellschaft,* 348 *Pa.* 335, 35 *A. 2d* 346 (*Sup. Ct.* 1944).

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING and JACOBS—5.

*For reversal*—None.