295 N.J. Super. 131 (1996)
684 A.2d 953
CANAL INSURANCE COMPANY, PLAINTIFF-APPELLANT,
v.
F.W. CLUKEY TRUCKING COMPANY, NELSON FLAGG, RENE HERNANDEZ AND CELESTINA HERNANDEZ, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 24, 1996.
Decided November 15, 1996.
*133 Before Judges HAVEY, BROCHIN and KESTIN.
Rooney, Peduto & Rooney, attorneys, for appellant (Charles A. Rooney, Jr., on the brief).
William A. Thomas, Jr., attorney, for respondent F.W. Clukey Trucking Company (Angela D. Watson, on the brief).
Fricke & Solomon, attorneys, for respondents Rene and Celestina Hernandez (Richard M. Fricke, on the brief).
The opinion of the court was delivered by BROCHIN, J.A.D.
Rene Hernandez was employed by International Terminal Operators at Port Newark, New Jersey. On December 27, 1987, he was working inside a truck trailer operated by F.W. Clukey Trucking Company, preparing to load it with crates of bananas. While Mr. Hernandez was working inside the trailer, Clukey's driver moved it away from the loading dock. The movement caused Hernandez to fall out of the trailer. He was seriously injured. Mr. Hernandez and his wife sued Clukey and its driver to recover for his injuries.
At the time of the accident, F.W. Clukey Trucking Company was the named insured under a $1,000,000 automobile liability policy issued by Canal Insurance Company. While Mr. and Mrs. Hernandez's action was pending, Canal commenced a separate action against them, the trucking company and its driver. Canal sought a declaratory judgment that it was not obligated to defend against Mr. and Mrs. Hernandez's claim or to pay any judgment in their favor because coverage for the accident was excluded by the "Occupant Hazard Excluded" endorsement of the policy; alternatively, that if there was coverage, Canal was entitled to be fully reimbursed by Clukey for any costs of defense or payments to Mr. and Mrs. Hernandez, and that its coverage obligation was limited to the amount of the minimum liability insurance required by law.
*134 After a non-jury trial and the submission of an agreed statement of facts, the trial court rejected Canal's contentions. A judgment was entered which declared that the "Occupant Hazard Excluded" endorsement was "null and void as a matter of law because it is against public policy;" that Canal was obligated to defend Clukey and its driver against the personal injury action and to fully indemnify them against costs and any adverse judgment up to the $1,000,000 limit of the policy; and that Canal was liable to Mr. and Mrs. Hernandez and to Clukey and its driver for the full amount of the attorneys' fees which they had incurred in the declaratory judgment action. Canal has appealed, challenging each of these rulings.
The "Occupant Hazard Excluded" endorsement on which Canal relies for its denial of coverage reads as follows:
It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability does not apply to Bodily Injury including death at any time resulting therefrom, sustained by any person while in or upon, entering or alighting from the [covered vehicle].
It is further agreed that, in the event the company shall, because of provision of the Federal or State statutes become obligated to pay any sum or sums of money because of such bodily injury or death resulting therefrom, the insured agrees to reimburse the company for any and all loss, costs and expenses paid or incurred by the company.
The parties do not dispute that Mr. and Mrs. Hernandez's claim falls within the terms of this endorsement.
Three reported decisions have considered the validity of Canal's "Occupant Hazard Excluded" endorsement. Canal Ins. Co. v. Benner, 980 F.2d 23 (1st Cir.1992); Great West Casualty Co. v. Canal Ins. Co., 901 F.2d 1525 (10th Cir.1990); Powers v. Meyers, 101 Ohio App.3d 504, 655 N.E.2d 1358, appeal not allowed, 73 Ohio St.3d 1413, 651 N.E.2d 1311 (1995). All three hold that the endorsement is void, but only to the extent that it conflicts with a specific state or federal statute or regulation. In Canal Insurance Co. v. Benner, supra, the endorsement was held to be contrary to public policy and therefore void because it conflicted with Maine's Financial Responsibility Law, which required that "`[e]very operator or owner of a motor vehicle ... *135 registered in this State shall maintain at all times the amounts of motor vehicle liability insurance or financial responsibility specified in Section 787,'" i.e., a minimum of $20,000 for one person and $40,000 for two or more persons injured in the same accident. 980 F.2d at 25, n. 1. The court rejected the insured's contention that the insurer's obligation was the $750,000 maximum limit of the policy, and held that it was liable only to the extent of the minimum coverage requirements imposed by the statute. Id. at 27. In Great West Casualty Co. v. Canal Insurance Co., supra, the endorsement was voided because it "could not abrogate Canal's responsibility under the clear and mandatory requirements of the KAIRA [Kansas Automobile Injury Reparations Act]" for the statutory minimum coverage of $100,000. 901 F.2d at 1527, 1528. In Powers v. Meyers, supra, the court held that the "Occupant Hazard Excluded" endorsement was void because it conflicted with an endorsement whose terms and inclusion in the policy were prescribed by Interstate Commerce Commission regulations, 49 C.F.R. § 387.15, pursuant to 49 U.S.C.A. § 10927 (now 49 U.S.C.A. § 31139 as amended). The Powers court did not discuss what the limits of coverage would be, presumably because everyone assumed that if the insured was held liable to the injured party, the insurer would be responsible up to the $750,000 of coverage provided by the I.C.C. endorsement.
These cases voiding the "Occupant Hazard Excluded" endorsement are analogous to New Jersey decisions which have voided clauses of truckers' automobile liability policies that purport to exclude coverage for injuries sustained in the course of truckers' "loading and unloading" operations. Parkway Iron & Metal Co. v. New Jersey Mfrs. Ins. Co., 266 N.J. Super. 386, 629 A.2d 1352 (App.Div. 1993), certif. denied, 135 N.J. 302, 639 A.2d 301 (1994); Bellafronte v. General Motors Corp., 151 N.J. Super. 377, 376 A.2d 1294 (App.Div.), certif. denied, 75 N.J. 533, 384 A.2d 513 (1977). See Ryder/P.I.E. Nationwide, Inc. v. Harbor Bay Corp., 119 N.J. 402, 575 A.2d 416 (1990). In Parkway, the motor vehicle liability policy at issue contained an exclusion for "Bodily injury or property damage resulting from the movement of property by a mechanical *136 device (other than a hand truck) not attached to the covered auto." 266 N.J. Super. at 389, 629 A.2d 1352. Relying on the language of Ryder/P.I.E., supra, 119 N.J. at 407, 575 A.2d 416, that "the obligation to provide coverage in a `loading and unloading' accident arises from statute and therefore cannot be limited by contract [emphasis in the Ryder/P.I.E. opinion]," Parkway held that the quoted exclusion was void. 266 N.J. Super. at 391, 629 A.2d 1352. We stated:
With this strong expression from our Supreme Court, we cannot condone [the quoted exclusion] in NJM's policy which attempts to exclude coverage ... for this claim ... allegedly arising out of the unloading of Bonland Industries truck with Parkway's crane. Exclusion 8 [quoted] is invalid and against the public policy of this State as expressed in N.J.S.A. 39:6B-1 and Ryder/P.I.E. Nationwide.

[Ibid.]
If the holdings of Parkway and Bellafronte and the dictum of Ryder/P.I.E. approving the Bellafronte holding were applicable to the present case, Canal's "Occupant Hazard Excluded" endorsement would also be void, and Clukey and its driver would be entitled to the benefit of the full $1,000,000 coverage of their policy, with no obligation to reimburse their insurer. Cf. Ryder/P.I.E., supra, 119 N.J. at 412-14, 575 A.2d 416. Since Parkway, Bellafronte and Ryder/P.I.E. are based on the courts' construction of N.J.S.A. 39:6B-1 and its predecessor, N.J.S.A. 39:6-46(a)(repealed), we next consider the question whether the Canal insurance policy was subject to N.J.S.A. 39:6B-1 when Mr. Hernandez was injured.
N.J.S.A. 39:6B-1 states:
Every owner or registered owner of a motor vehicle registered or principally garaged in this State shall maintain motor vehicle liability insurance coverage under provisions approved by the Commissioner of Insurance, insuring against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of a motor vehicle wherein such coverage shall be at least in: a. an amount or limit of $15,000.00, exclusive of interest and costs, on account of injury to, or death of, one person, in any one accident; and b. an amount or limit, subject to such limit for any one person so injured or killed, of $30,000.00....
*137 Canal's policy was not issued to insure a motor vehicle "registered or principally garaged in this State." Clukey's truck is garaged, and presumably registered, in Connecticut; it is not registered in New Jersey.
N.J.S.A. 17:28-1.4 requires some insurers of motor vehicles which are not garaged or registered in the State to comply with New Jersey insurance law. Pursuant to this statute, every motor vehicle insurance policy sold by "Any insurer authorized to transact or transacting automobile or motor vehicle insurance business in this State, or controlling or controlled by, or under common control by, or with, an insurer authorized to transact or transacting insurance business in this State" must provide insurance protection complying with New Jersey law, including specifically N.J.S.A. 39:6B-1, with respect to any claims arising from accidents which occur while the vehicle "is used or operated in this State." Policies written by insurers subject to N.J.S.A. 17:28-1.4 that do not contain express provisions complying with this statute are deemed to have been amended to comply. Lusby By and Through Nichols v. Hitchner, 273 N.J. Super. 578, 583-84, 642 A.2d 1055 (App.Div. 1994).
However, N.J.S.A. 17:28-1.4 also appears to be inapplicable to the present case. The parties have stipulated that Canal is not licensed to write insurance in New Jersey. They have not stipulated or offered evidence to show whether Canal "control[s] or [is] controlled by, or under common control by, or with, an insurer authorized to transact or transacting insurance business in this State." According to the Department of Insurance, the only Canal Insurance Company authorized to do business in New Jersey surrendered its license to write insurance in this State on December 31, 1986, and no member of the Canal Group has written insurance in this State thereafter. If that information is correct, the Canal "Occupant Hazard Excluded" endorsement at issue in this case is not subject to New Jersey statutory law. However, the parties did not focus on this issue. On remand, any *138 of the defendants may, if they wish, attempt to prove facts which would subject Canal's policy to N.J.S.A. 17:28-1.4.
We next consider whether New Jersey law controls the validity of Canal's "Occupant Hazard Excluded" endorsement by virtue of our common-law choice-of-law rules. Although our conflicts law has evolved considerably since Buzzone v. Hartford Accident and Indemnity Co., 23 N.J. 447, 129 A.2d 561 (1957), aff'g 41 N.J. Super. 511, 125 A.2d 551 (App.Div. 1956), that case is our starting point. The plaintiffs were New Jersey residents. See Buzzone, supra, 41 N.J. Super. at 524, 125 A.2d 551 (Freund, J.A.D., dissenting). They were injured in an automobile accident in New Jersey as the result of the negligence of the driver of the other vehicle. The tortfeasor was a New York resident, licensed in New York, 23 N.J. at 450, 129 A.2d 561; the vehicle he was driving was registered in New York, 41 N.J. Super. at 515, 125 A.2d 551; and the policy had been issued to him in New York, 41 N.J. Super. at 513, 125 A.2d 551. The plaintiffs recovered a $40,000 judgment against him and, when it remained unsatisfied, sued the insurance company which had issued his motor vehicle liability policy. 23 N.J. at 450, 129 A.2d 561. The policy had been "executed in New York and delivered to a resident of New York with respect to a motor vehicle registered in New York...." 41 N.J. Super. at 515, 125 A.2d 551. The insurer defended on the ground that the insured had secured the policy under a fictitious name after having failed to file proof of financial responsibility required because of a prior accident. 23 N.J. at 450-51, 129 A.2d 561. The Supreme Court assumed that on the basis of these facts, the policy would be valid if the controlling law was New Jersey's but invalid if it was New York's. The Court held:
We think it too settled to be questioned that the rights and liabilities of the insurer under the policy and the statutory impact thereon are to be determined by the law of the state where the contract was made. "The question of what is the obligation imposed by a contract of insurance, what are its terms and provisions, has usually rightly been held to be governed by the law of the place of contracting." 2 Beale on Conflict of Laws, sec. 346.4, p. 1210 (1935) [other citations omitted].
[23 N.J. at 452, 129 A.2d 561.]
*139 In State Farm Mutual Automobile Ins. Co. v. Simmons' Estate, 84 N.J. 28, 417 A.2d 488 (1980), our Supreme Court re-examined the question of what law governs an insurer's obligations under a motor vehicle liability policy. In that case, the insurance policy had been sold in Alabama to an Alabama resident and it insured an automobile registered in Alabama. A few months after the policy was purchased, the insured joined the Marines and was assigned to a naval installation in New Jersey. After he had been based in New Jersey for a short time, he returned to Alabama on a four-day pass and drove his car back to the New Jersey installation. Less than two months later, at about 11:00 a.m., he lent the car to a fellow Marine who requested it only to drive to a nearby bank to cash his paycheck. The borrower failed to return the car. While the owner was on patrol some time between midnight and 4:00 a.m. the next day, he saw the car parked in front of a nightclub, but the borrower reached the car before he did. The owner demanded the return of the car, but the borrower, who was intoxicated, refused to comply, and drove away. At 3:40 that morning, the borrower drove the car into a tree. He and four other occupants of the vehicle were killed. 84 N.J. at 30-32, 417 A.2d 488. According to the Supreme Court's opinion, "Claims under the ... insurance policy were made on behalf of the decedents." Id. at 32, 417 A.2d 488. The insurer brought an action seeking a declaration that "under the circumstances surrounding the use of the car at the time of the fatal crash, the policy issued to [the owner of the car] did not extend coverage to [the borrower] and his four passengers." Ibid.
In reaching its determination that Alabama law governed, the Court considered the "`most significant relationship' standard of the Restatement (Second) of Conflict of Laws § 188 (1971)" and the "`governmental interest' test." Id. at 34, 417 A.2d 488. Reviewing the evolution of the law since Buzzone, supra, the Court said,
Accordingly, we conclude that the proper approach in resolving conflict-of-law issues in liability insurance contract controversies is that which may be synthesized from this post-Buzzone evolution of the law in both the contract field as well as in *140 the somewhat related tort field, particularly in the area of automobile accident litigation. This calls for recognition of the rule that the law of the place of the contract ordinarily governs the choice of law because this rule will generally comport with reasonable expectations of the parties concerning the principal situs of the insured risk during the term of the policy and will furnish needed certainty and consistency in the selection of the applicable law. [Citations omitted.] At the same time, this choice-of-law rule should not be given controlling or dispositive effect. It should not be applied without a full comparison of the significant relationship of each state with the parties and the transaction. That assessment should encompass an evaluation of important state contacts as well as a consideration of the state policies affected by, and governmental interest in, the outcome of the controversy.
[Id. at 37, 417 A.2d 488.]
The Court then explained that its starting point for the application of these principles was "a recognition that provisionally the law of the State of Alabama where the insurance contract was originally obtained should govern the determination of the rights and liabilities of the parties under the contract" because that approach "presumptively comports with the reasonable expectations of the contracting parties ... and satisfies the needs for certainty, predictability, and uniformity." Id. at 38, 417 A.2d 488. The considerations which affected the determination of the case before the Court were that the insured was a domiciliary of Alabama; the vehicle was purchased and registered there; the policy was issued through an Alabama insurance agent and by an insurer authorized to do business in Alabama; the rates were presumably predicated on Alabama statistical experience; the insured's presence in New Jersey was short and only temporary, and he planned to return to Alabama. Ibid. The Court also noted, "With respect to the accident victims, the record does not indicate the nature and extent of their contacts with New Jersey." Id. at 39, 417 A.2d 488. But the dissent observed that the request by one of the occupants of the car "to visit his wife in Red Bank is an indication that he might have been a New Jersey domiciliary." Id. at 57 n. 3, 417 A.2d 488 (Pashman, J., dissenting).
The present case requires us to evaluate "the significant relationships of each state with respect to the parties and the subject matter of the litigation," id. at 43, 417 A.2d 488, in light of *141 State Farm Insurance Co. In our case, the insured was based in Connecticut and Granby, Connecticut is described as the location of its operations; its presence in New Jersey was transient, but perhaps recurring. The insurer, which was based in South Carolina, was authorized to do business in Connecticut, but not in New Jersey. The application for the policy was executed and signed by an agent in Connecticut. The insurance policy, although issued by an insurance agent in Maine, was entered into in Connecticut. The policy was filed as proof of financial responsibility in Connecticut, Maine and Rhode Island, but not in New Jersey. The accident which is at the root of this litigation occurred in New Jersey, and Rene Hernandez, the injured party, was employed here. The record does not indicate whether or not he lives in this State.
To make the evaluation of relationships and governmental interests in the present case that is mandated by State Farm Insurance Co., supra, we need to identify the potential consequences of applying New Jersey law and the interests that will be affected. As our previous discussion has indicated, New Jersey law would invalidate two provisions of the "Occupant Hazard Excluded" endorsement of the Canal policy. The first result would be to make the insurer potentially liable to the injured party for up to $1,000,000; the second would be to absolve Clukey from its contractual undertaking to reimburse Canal for any payments it is required to make on account of liabilities which the endorsement purports to exclude from coverage. We need to consider separately what compelling governmental interests would be served by each of these significant departures from the reasonable expectations which, because of the policy language, Canal and Clukey presumably both entertained when they entered into their insurance contract.
If no Federal law were applicable, New Jersey would certainly have an interest in assuring the availability of an adequate amount of liability insurance to indemnify persons who live or work here against injuries caused by interstate carriers. However, detailed *142 federal statutes and regulations dictate that Clukey is required to maintain at least $750,000 of motor vehicle liability insurance. See 49 U.S.C.A. § 31139, formerly 49 U.S.C.A. § 10927; 49 C.F.R. § 1043.2(b)(2)(a). Clukey has complied with those requirements and, on appeal, Canal does not dispute that it is potentially liable to Rene Hernandez up to $750,000. The record submitted to us does not tell us the extent of his injuries or the amount of his claim. But since we are attempting to discern and to weigh the demands of New Jersey's public policy, it is significant to note that currently New Jersey has no specific insurance requirements for motor carriers, with the exception of overweight vehicles and those carrying hazardous materials; neither exception is applicable here. Instead, New Jersey applies its general insurance requirements of $15,000 per person and $30,000 per accident, N.J.S.A. 39:6B-1, to both intrastate and interstate motor carriers. We conclude, therefore, that our State's interest in assuring adequate financial protection for persons injured by interstate carriers is not a factor that weighs significantly in favor of deviating from what State Farm Insurance Co. has formulated as the presumptive choice-of-law rule.
We see no New Jersey interest in assuring that Clukey gets a better bargain or Canal a worse one than that for which they contracted. There is no suggestion in the record that inclusion of a reimbursement obligation in the policy was the product of fraud, deception, or unfairness of any kind. As we discuss in more detail later in our opinion, Connecticut and Federal law sanction including terms in an insurance contract by which an insured agrees to reimburse the insurer for expenditures compelled by statutes that expand coverage beyond what has been expressly bargained for. We conclude, therefore, that the fact that New Jersey law, if controlling, would void Clukey's reimbursement obligation is also not a significant reason to depart from the presumptive rule that the controlling law is that of Connecticut where the insured is based and the insurance contract was entered into.
*143 Mr. and Mrs. Hernandez argue that if New Jersey law is not applicable, we should reach the same result by assuming that Connecticut law is the same as New Jersey's on the issue of the validity of the "Occupant Hazard Excluded" endorsement because there are no reported Connecticut decisions on the question. See Unifoil Corp. v. CNA Ins. Cos., 218 N.J. Super. 461, 467 n. 1, 528 A.2d 47 (App.Div. 1987) (when parties fail to cite law of other state, court may assume it is same as law of New Jersey); but see N.J.R.E. 201(a) & (c) (judicial notice may be taken of statutes and regulations of other states; such notice is discretionary); Winer Motors, Inc. v. Jaguar Rover Triumph, Inc., 208 N.J. Super. 666, 673, 506 A.2d 817 (App.Div. 1986) (judge properly applied New Jersey law as indicative of Connecticut law where the latter was not specifically pleaded, but judge could have taken notice of Connecticut law under New Jersey Rules of Evidence.) But cf. Excel Logistics, Inc. v. Maryland Casualty Co., 1995 WL 66990 (Conn.Super.Ct. Feb.1, 1995), aff'd, 40 Conn. App. 415, 671 A.2d 408 (1996) (rejecting the rule of Ryder/P.I.E. for loading and unloading cases).
Connecticut requires motor vehicle liability policies to "contain at least ... bodily injury liability" coverage, Conn. Agencies Regs. § 38a-334-1,[1] and provides that the "insurer's obligation to pay and defend may be made inapplicable" only to specifically enumerated risks which do not include anything resembling the risk described by the "Occupant Hazard Excluded" endorsement. Conn. Agencies Regs. § 38a-334-5(c). However, "[t]hese regulations do not apply to the insurance afforded under any policy: (1) to the extent that the insurance afforded exceeds the limits specified in subsection (a) of § 14-112 of the general statutes...." Conn. Agencies Regs. § 38a-334-4. See also Conn. Agencies Regs. § 38a-334-3 ("Policies affording a coverage to which these regulations apply shall be deemed to afford insurance under such coverage at least equal to that required by these regulations.") *144 The mandatory minimum required liability coverage is $20,000 for one person and $40,000 for one accident. C.G.S.A. § 14-112(a). The clear implication of these provisions is that if Connecticut law invalidates the endorsement at issue in the present case, it does so only to the extent of the $20,000 minimum coverage required by Connecticut law. Furthermore, Connecticut law implicitly sanctions the provision of Canal's "Occupant Hazard Excluded" endorsement which requires the insured to reimburse the insurer for its expenditures on account of liabilities excluded by the endorsement, but mandated by State or Federal law. See Conn. Agencies Regs. § 38a-334-5(e)[2]; Conn. Agencies Regs. § 16-304-D8a.[3] Consequently, if the "Occupant Hazard Excluded" endorsement is void under Connecticut law  an issue which we do not undertake to decide  Canal would be liable to Mr. and Mrs. Hernandez only up to the statutory minimum amount of insurance and Clukey would be liable to reimburse Canal to the full extent of Canal's expenditures. Because Federal law, which we are about to discuss, makes Canal potentially liable to the injured parties for a greater amount and also requires Clukey to reimburse the insurer for the full amount of its expenditures, we do not need to decide *145 whether Connecticut law would invalidate the "Occupant Hazard Excluded" endorsement.
As we have previously discussed, if New Jersey law is applicable, Canal is potentially liable to Mr. and Mr. Hernandez to the full extent of the Clukey policy and is not entitled to reimbursement from its insureds. But if New Jersey law does not control, the rights and obligations of the parties are governed by an endorsement entitled "Endorsement for Motor Carrier Policies of Insurance for Automobile Bodily Injury and Property Damage Liability under Section 10927, Title 49 of the United States Code." This endorsement states expressly that its purpose is to amend the policy to comply with 49 U.S.C.A. § 10927 (now 49 U.S.C.A. § 31139). The endorsement declares:
It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, or any other endorsement thereon or violation thereof, or of this endorsement, by the insured, shall relieve the Company from liability or from the payment of any final judgment, irrespective of the financial responsibility or lack thereof or insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which this endorsement is attached are to remain in full force and effect as binding between the insured and the Company, and the insured agrees to reimburse the Company for any payment made by the Company on account of any accident, claim or suit involving a breach of the terms of the policy, and for any payment that the Company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.
The limits of Canal's exposure according to this endorsement are the "limits prescribed in 49 CFR 1043.2(b)(1) governing minimum amounts of insurance"; i.e., $750,000 for one accident.[4]
49 C.F.R. § 387.15, a regulation issued by the Interstate Commerce Commission establishing the "minimum levels of financial responsibility for motor carriers" directs that "Endorsements for policies of insurance ... must be in the form prescribed by the FHWA [Federal Highway Administration] and approved by the *146 OMB [Office of Management and Budget]."[5]See Powers v. Meyers, supra, 655 N.E.2d at 1363 ("The form of endorsement attached to the Canal policy was developed by the ICC to ensure compliance with Section 1043.1(a), Title 49, C.F.R., which requires all ICC-certified motor carriers to maintain insurance or some other form of surety `conditioned to pay any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation....'") The language of the I.C.C. endorsement contained in Clukey's Canal policy, which would require reimbursement by Clukey for Canal's payments to Mr. and Mrs. Hernandez, complies with this requirement.
If New Jersey law is not applicable to invalidate Canal's "Occupant Hazard Excluded" endorsement, this I.C.C. endorsement makes the insurer potentially liable for any judgment, up to $750,000, which Mr. and Mrs. Hernandez may obtain against its insureds. If such a payment is one "that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in [that] endorsement," Canal is entitled to be reimbursed by Clukey for the payment and for related costs.[6]
The judgment appealed from is therefore reversed and the case is remanded to the Law Division for further proceedings consistent with this opinion, including a redetermination of which defendants, if any, are successful claimants within the meaning of R. 4:42-9(a)(6).
NOTES
[1] In 1987, at the time of the accident, Conn. Agencies Regs. §§ 38a-334-1 through -5, cited herein, were found at §§ 38-175a-1 through -5.
[2] "The insurance for the liability specified in subsection (a) of section 14-112 of the general statutes may be written subject to deductible amounts per claim or per accident ... and provided the insurer shall make full payment of all losses regardless of reimbursement by the insured." (Emphasis added.)
[3] The Public Utility Control Authority's approved "Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement Form" includes the following provision:

The certification of the policy, as proof of financial responsibility under the provisions of any State motor carrier law or regulations promulgated by any State Commission having jurisdiction with respect thereto, amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereat; provided only that the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reasons of the obligation assumed in making such certification." (Emphasis added.)
[4] There is another endorsement, which was added approximately four months later and which contains language substantially the same as that quoted from the first endorsement. The second endorsement raises the coverage to a limit of $1,000,000 under circumstances not relevant to this case.
[5] At the time of the accident, this section provided that the endorsement must be in the form prescribed by the BMCS (Bureau of Motor Carrier Safety), rather than the FHWA.
[6] If Canal is liable on the policy because the "Occupant Hazard Excluded" endorsement is void under New Jersey law, any payment by the insurer would not be a "payment that the Company would not have been obligated to make under the provisions of the policy except for the agreement contained in this [I.C.C.] endorsement," and the I.C.C. endorsement would not entitle Canal to reimbursement from Clukey.